PHILLIPS, Respondent, vs. CARVER and wife, Appellants.

*April 18 — May 24, 1898.*

*Pleading: Demurrer ore tenus: Misjoinder of causes of action: Waiver: Specific performance: Election.*

1. Upon a demurrer *ore tenus* to a complaint, on the ground that it does not state facts sufficient to constitute a cause of action, the complaint will be construed liberally with a view to substantial justice, and all reasonable presumptions will be allowed in its

| 99 | 561 |
|----|-----|
| 103 | 435 |
| 104 | 291 |
| 99 | 561 |
| 105 | 329 |
| 99 | 56) |
| 115 | 123 |

favor. The objection that two causes of action have been improperly united cannot be raised by such a demurrer.

2. Under the provisions of sec. 2654, R. S. 1878, the objection that several causes of action have been improperly joined is waived if not taken by demurrer or answer.

3. Where two causes of action are stated in the complaint, it is within the discretion of the court to require the plaintiff to elect under which cause he will proceed, and its ruling will not be disturbed on appeal except in case of an abuse of such discretion.

4. When the time for performance is made essential by the terms of a contract or by a reasonable notice to the party in default, the party who is entitled to declare the contract forfeited for a default may waive his right to do so, either expressly or by conduct which is consistent only with a purpose on his part to regard such contract as still subsisting and not ended by the default.

5. H., having been put in possession of land under an executory contract with W. for the purchase thereof, by which payment was required to be made in instalments and failure to pay any instalment rendered the contract void, paid some interest but made default in paying an instalment of the principal, and thereupon W. insisted that he should pay the same as soon as he possibly could. W. afterward conveyed the land to C. by a deed which expressly stated that it was "subject to a written contract with H.," which the grantee agreed to comply with, and C. entered upon the land and made improvements. In an action by P., to whom H. had assigned his contract, against C., to whom he had tendered payment of the whole amount due within a reasonable time after notice, to recover possession of the land and to compel a conveyance thereof, *held*, that the default had been waived and that he was entitled to the judgment demanded in his complaint.

APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

Appeal from a judgment of specific performance of a land contract, in favor of the plaintiff and against the defendants, for eighty acres of land. The complaint was in form the same as in an action of ejectment; stating that plaintiff was the owner and entitled to the possession of the premises, and that the defendant unlawfully and wrongfully entered upon the premises, and withholds the possession thereof, etc.

On November 23, 1893, William S. Warner, being the owner of the land, entered into an agreement in writing with one Levi Holmes to sell and convey the same to him for the agreed price of $240, payments to be made as follows: $25 at the delivery of the contract; $50 in one year, with seven per cent. interest thereon; $50 in two years, and $50 in three years, and $65 in four years, with interest at seven per cent. on the sums remaining unpaid. Holmes paid the sum of $25 when the agreement was signed, but failed and neglected to pay the first payment of $50 which became due and payable November 23, 1894, and $50 which became due and payable November 23, 1895. By the terms of the agreement it was expressly stipulated and agreed that, if the said Holmes "should fail to make any of the payments of purchase money specified at the time and in the manner specified in such case, the agreement should be henceforth utterly void, and all payments thereon forfeited, subject to be revived and renewed by the act of the said Warner, or the mutual agreement of both parties." The agreement was acknowledged and recorded. November 12, 1895, Holmes assigned the contract to the plaintiff, and the assignment was duly witnessed and acknowledged, and recorded December 11, 1895. There was an indorsement on said contract of the receipt of $15.05 for one year's interest, due November 23, 1894, under date of April 20, 1895.

The defendants denied all the allegations of the complaint, and alleged that the defendant *C. S. Carver* was then, and at the time of the commencement of the action, the owner in fee of the premises, holding the same by virtue of a deed of conveyance from said W. S. Warner recorded in the office of the register of deeds for said county, in volume 88, page 306; and further denied that any valid assignment was ever made of the land contract mentioned in the complaint to the plaintiff, *Phillips;* and denied, also, that *Phillips* had any right, title, or interest in the land described in the complaint,

and alleged that all the right, title, and interest of said Holmes in said land had been forfeited by his failing to comply with the terms and conditions mentioned and set forth in the contract of purchase, by failing to make payments as therein required. And the said defendant *Carver* further answered that since he purchased said lands he had made valuable improvements thereon, to the amount of.$350, and by way of counterclaim alleged that the land contract mentioned and described in the complaint was made and delivered by said Warner to Levi Holmes upon the express condition that Holmes should make payments on the principal sum payable under said contract, with interest, at the time and in the manner mentioned in said contract, and that, if he should fail to make any of the payments as specified, said land contract should be henceforth utterly void, and all payments thereon forfeited; that thereafter, on November 23, 1894, he failed and neglected to pay the sum of $50, which became due and payable under said agreement, although requested so to do by said W. S. Warner, and the said contract thereby became null and void, and was never afterwards revived or renewed by the said W. S. Warner or by the defendants, or either of them. The defendants alleged that said Holmes fraudulently pretended to assign said contract to the plaintiff, *Phillips*, but that said pretended assignment was made without any valid consideration whatever, and was made for the purpose of creating a cloud upon the title of defendants' said land, and that said Holmes well knew the fact when he took the assignment. The defendants demanded judgment that the plaintiff's complaint be dismissed, and that the contract mentioned and described in the complaint be declared null and void, and canceled, and that the defendants recover judgment for their costs.

At the trial the defendants objected to any evidence under the complaint, for the reason that it did not state facts sufficient to constitute a cause of action, and for the reason that

it appeared upon its face that two causes of action had been improperly joined,— one in equity and one at law. The objections were overruled. They then moved that the plaintiff be compelled to elect which cause of action he would proceed under, but this was denied.

The plaintiff produced in evidence an assignment to himself of the land contract to L. Holmes, and testified that he was a brother-in-law of said Holmes; that the consideration of the assignment was $1, and a doctor's bill he had against said Holmes, of about $40; that when he bought the land there was about an acre cleared, and some fences on it. He further testified that he knew Warner in his lifetime, and first learned that defendant *Carver* claimed an interest in this land November 12, 1895; that he tendered payment to *Carver* on the contract on the 18th of January, 1896, at his residence, of the sum of $117.55, and sent the money December 23d to *Carver*, by his hired man; that he did not take it; that "he [*Carver*] said I was too late; that I had forfeited the contract;" that *Carver* was then living in Bovina; that he built a house on the land, cut off the timber from three or four acres, and piled it up; that the value of the improvements was about $50 to $75, and possibly $100; that the value of the Holmes improvements when he (*Phillips*) bought the land was about $25, and that he estimated the value of the timber cut by *Carver* from the land at about $200; that he did not know that Holmes was in default at the time he took the assignment of the contract; that Holmes told him (*Phillips*) that Warner had deeded the property to *Carver* after the papers were transferred to plaintiff.

Levi Holmes testified that he was the party named in the contract, and bought the land by it from W. S. Warner on the date given, and he remembered afterwards of selling it to the plaintiff, *Phillips;* that he cleared about an acre — possibly two acres — of it; that he never lived on the land; worked part of it; raised potatoes and buckwheat on it;

fenced part of it. He identified the assignment of the contract he made to the plaintiff, *Phillips*, but testified that he never paid any of the principal sum after paying the $25 down at the time the contract was made; that he should judge the improvements made by *Carver* were of the value of about $75; that the reason he deeded the land to *Phillips* was that he could not meet the payments according to the agreement, and told him to get out of it what he could; that "he was to pay me my doctor's bill I owed him, if he held the land. He did not pay any money. The doctor's bill has never been settled yet."

One Louis Shauger testified that the 18th of January, 1896, he was at *Carver's* residence, when *Phillips*, the plaintiff, offered him the money for the land. *Carver* said he was too late. *Phillips* asked him if the papers were made out to *Carver*. He said they were made out to him and his wife. He had the money in his hand, and he offered it to *Mrs. Carver*, and she refused it, and he laid it on the table. They refused to take it, and he put it in his pocket. It was $125. Otto Lind testified substantially to the same offer made by him (witness) for *Phillips* to *Mr.* and *Mrs. Carver*. They would not take the money; said it was too late. Plaintiff produced in evidence a warranty deed, made October 9, 1895, given by W. S. Warner and wife to *Warren Carver* and wife, of the premises in question.

Mrs. Margaret Warner testified that she was the widow of W. S. Warner, and was present when Holmes came and paid his interest, $15.05, April 20, 1895; that the understanding then was that Holmes should pay, as soon as possible, the principal; that there was no time given him, whatever; that Mr. Warner said he must pay the money as soon as he possibly could, and Holmes said he would try and do the best he could; that she subsequently wrote to Holmes, for Warner, telling him he must pay the principal, or he would consider the contract void; that that was

shortly before *Carver* came to buy the land; that Holmes made no reply to that; that *Phillips* called on the 12th of November, 1895; that he told Mr. Warner that he had bought the Holmes contract, and asked him how much he owed him on it; and that Mr. Warner said he had nothing more to do with it; he had sold it to *Carver*.

Plaintiff having rested, defendants moved for a nonsuit, which was denied.

The defendant *Rose Carver* testified that December 1, 1895, *Dr. Phillips* came to their house to see about some land that Holmes had a contract on, and that he had bought the contract. He said there was some money due, and that he would send the money in two or three days. She next saw him January 18, 1896. "He said he had brought us up some money to pay on contract. *Carver* told him he was altogether too late, as we considered the payment past due. He went to the table, and wanted to count out some money. I spoke to him, and said, '*Phillips*, this is the 18th of January.' I said, 'It is pretty late coming with that money.' He asked me if I would take the money. I think he asked *Carver* before that. I told him I thought it was too late; my husband said it was too late." There was evidence tending to show that the value of the improvements that *Carver* and wife had made since they got the deed from Warner was $300. *Warren Carver* testified that the 1st of December, 1895, *Phillips* came to his house, and stated he had some money to send him in two or three days, and that he told him he considered it too late altogether, and that, if Holmes had come to him *at the time the payments were due*, he certainly should have given him a deed; he did not consider himself under obligation to take any money on that, so that he need not send anybody up with it; that subsequently, on the 18th of January, 1896, *Phillips* came and counted out something like $117, and asked if they would take the money, but he said he considered it too late to take money

now. *Phillips* picked up what he had, and they talked about making a compromise.

There was evidence given tending to show that the plaintiff, *Phillips*, informed *Carver* November 14, 1895, *that he was ready to pay all sums due on the contract*, and showing that the defendants on the 25th of November, 1895, gave notice to Holmes, of whom plaintiff, *Phillips*, purchased, that they had purchased from Warner the premises in question, and held his warranty deed therefor, "subject to contract of sale *therefor to you*, dated November 23, 1893; consideration, $240; payments to be made as follows: $25 to be paid at the date of said contract; $50 in one year thereafter, with seven per cent. interest; $50 in two years, with seven per cent. interest, to be paid annually; $50 in three years, with seven per cent. interest, to be paid annually; and $65 in four years, with seven per cent. interest thereon, to be paid annually,— and that there is now due and unpaid on said contract $50 which became due November 23, 1894, and $50 which became due November 23, 1895, with seven per cent. interest thereon from and after November 23, 1894; and we hereby *demand that you pay said sum of $100, with interest thereon due as aforesaid, to us at once, or else we will declare said contract utterly void, and all payments thereon forfeited.*" A warranty deed of the premises from W. S. Warner and wife to the defendants, *Carver* and wife, was put in evidence; and said deed stated that it was made " subject to a written contract for the sale of said land to Levi Holmes, dated November 23, 1893, which contract parties of the second part *hereby agree* to comply with all the conditions thereof, on the part of the said William S. Warner, one of the parties therein, and the said Levi Holmes complying with the conditions of said contract on his part agreed therein, as in said contract agreed to be performed."

The court found that the plaintiff was the owner of the land and premises described in the complaint; that William

S. Warner, November 23, 1893, sold them to Levi Holmes for $240, and that the defendants wrongfully entered upon the premises and dispossessed the plaintiff, and still wrongfully and unlawfully occupied and withheld the same; that said land contract gave the possession of the premises to Levi Holmes, and that November 23, 1893, he (Holmes) took possession accordingly; that November 12, 1895, for a valuable consideration, he sold and conveyed the premises and possession thereof to the plaintiff by conveyance and assignment in writing duly executed and delivered, and that on that day said Holmes and said plaintiff, *Phillips*, wholly performed all conditions and agreements according to said land contract and conveyance, and made payment of interest thereon according to said land contract; that the said plaintiff on November 21, 1895, tendered the principal and interest then due to W. S. Warner, in person, at the city of Appleton, to wit, the sum of $115.05; that at said time said Warner informed the plaintiff that he had conveyed his interest, such as the same might be, to said defendants; that on the 3d of December, 1895, said plaintiff tendered in lawful money to the defendants all principal and interest due on November 23, 1895, namely, the sum of $115.05; that defendants refused to receive the same, and thereafter, on January 18, 1896, plaintiff again tendered in payment to said defendants the sum of $117.55; that said Warner and said defendants had at all times since refused to receive said principal and interest so tendered, and that said defendants, by assignment and conveyance from W. S. Warner and wife dated October 9, 1895, purchased and received, for a consideration of $229.40, all the rights of W. S. Warner, as aforesaid mentioned, in said land contract, and that said conveyance contained the following clause, to wit: " This deed is made subject to a written contract for the sale of said land to Levi Holmes dated November 23, 1893, which contract parties of the second part hereby agree to comply with all the conditions

thereof on the part of said William S. Warner, one of the parties of the first part herein, on the said Levi Holmes complying with the conditions of said contract agreed to be performed;" that said defendants took said deed and conveyance with full notice and knowledge that said Holmes and said plaintiff were the owners of said premises, and entered into possession of the same; that the sum of $15.05 interest was paid by said Holmes, and received by W. S. Warner, April 20, 1895, and duly indorsed upon said land contract, *with the understanding* that the $50 principal would be paid at a future date, with seven per cent. interest; that on November 23, 1895, the sum of $100 principal and $15.05 interest became due, which amount was legally tendered to said W. S. Warner and to said defendants as aforesaid; that $50 additional principal, with $15.05 interest, became due and payable November 23, 1896, after the commencement of this action; that the sum of $65 principal, with interest at seven per cent., became due and payable from said plaintiff to said defendants; the sum of $180.10, with interest thereon at seven per cent., since November 23, 1896, and the further sum of $65, with seven per cent. interest thereon from November 23, 1896, was to become due and payable November 23, 1897; that the damages to the plaintiff by the withholding of said premises by the defendants, together with the value of the hay and timber cut down and removed therefrom by them, is the sum of $125; that the defendants are entitled to the value of the improvements made on said premises, which are as follows: $350, above the material used in making the same, and which was taken from said premises, less the value of rents and profits of said premises while said plaintiff was dispossessed of the same; that the facts as alleged in the complaint are true.

As conclusions of law the court found that the plaintiff, *Phillips*, was entitled to the possession of the premises, being the grantee and legal representative of Levi Holmes and of

Phillips vs. Carver and wife.

W. S. Warner, prior to said defendants; that the defendants wrongfully occupy said premises, and unlawfully dispossessed the plaintiff of the same; that the plaintiff had the right to make payments in the place of Holmes, and receive a deed for said premises on complying with the terms and conditions of said land contract; that there is now due and payable to said defendants from said plaintiff, according to the terms of said contract, the sum of $180.10, with interest thereon from November 23, 1896, and that there would become due and payable the further sum of $65 on the 23d day of November, 1897; that when the aforesaid amount that is due, and the amount that is to become due, shall have been fully paid by the plaintiff to the said defendants, said defendants are legally bound to, and they shall and must, execute a good and sufficient warranty deed, conveying to the plaintiff said premises, and all right, title, and claims that they acquired from said W. S. Warner, according to the terms and conditions of said land contract; and that said plaintiff, *Phillips*, should pay, or cause to be paid, to said defendants, the sum of $225, being the difference of the value of improvements made by defendants, less the damages aforesaid by withholding the same, and less the waste committed by said defendants at the time of the commencement of this action; that the plaintiff is entitled to judgment and an order restraining said defendants from committing any further waste, and is entitled to an order and execution accordingly; and that the plaintiff have judgment as aforesaid, and for the costs and disbursements in the action.

From a judgment entered substantially in accordance with said findings, the defendants appealed.

For the appellants there was a brief by *Duffy & McCrory*, and oral argument by *J. H. McCrory*. To the point that specific performance will not be decreed where it would be

inequitable, or where the party seeking it was in default without excuse, they cited *Hay v. Lewis*, 39 Wis. 364; *Williams v. Williams*, 50 id. 316; *Crowley v. Hicks*, 72 id. 539; *Rogers v. Van Nortwick*, 87 id. 429; *Combs v. Scott*, 76 id. 667; *Docter v. Furch*, 91 id. 477; *Seymour v. Delancey*, 6 Johns. Ch. 223; *Smith v. Wood*, 12 Wis. 382; *Wells v. Millet*, 23 id. 64; *Tiernan v. Gibney*, 24 id. 190; *Eaton v. Eaton*, 15 id. 259; *Hanson v. Michelson*, 19 id. 498; *Colson v. Thompson*, 2 Wheat. (Brightly's notes), 336; *McIver v. Kyger*, 3 id. 53; *Dorsey v. Packwood*, 12 How. 126; *Boone v. Missouri Iron Co.* 17 id. 340; *McNeil v. Magee*, 5 Mason, 244; *Kendall v. Almy*, 2 Sumner, 278; *Denniston v. Coquillard*, 5 McLean, 253.

For the respondent the cause was submitted on the brief of *Whitman & Ryan*.

PINNEY, J. The objection of the defendants to any evidence under the complaint was rightly overruled. Upon a demurrer *ore tenus* to the complaint on the ground that it does not state facts sufficient to constitute a cause of action, the complaint will be construed liberally, and with a view to substantial justice; and all reasonable presumptions will be allowed in its favor. *Hagenah v. Geffert*, 73 Wis. 636; *Teetshorn v. Hull*, 30 Wis. 162. Extended discussion is not required to show that the complaint states substantially a cause of action for specific performance of the contract of November 23, 1893, and recovery of the lands described therein. The objection that two causes of action had been improperly united could not be raised by demurrer *ore tenus*. The defendants, having answered the complaint, had waived that objection by failure to take it by answer or formal demurrer. "If no objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the

court, and the objection that the complaint does not state facts sufficient to constitute a cause of action." R. S. 1878, sec. 2654.

Whether the plaintiff should have been required to elect under which claim or cause of action he would proceed, was a matter within the discretion of the court, and there is nothing to show any abuse of such discretion. This ruling cannot be assigned as error.

W. S. Warner was the owner of the land, and both parties claimed by title derived under and through him. He executed to Holmes the contract, which the latter transferred to the plaintiff, *Phillips*, November 12, 1895. The contention that *Phillips* had forfeited all rights he ever had under the contract seems to be satisfactorily answered by the deed from W. S. Warner and wife to the defendants, dated October 9, 1895, put in evidence, which, as to Warner and the defendants claiming title under him, was clearly a waiver of the objection of lapse of time in the performance of the contract. The testimony of Mrs. Warner was that Holmes paid $15.05, April 20, 1895, as interest on the contract, and which Warner received. She testified, also, that the understanding then was that Holmes should pay, as soon as possible, the principal,— "there was no time given him whatever;" that Warner said "he must pay the money as soon as he possibly could;" that she subsequently wrote to Holmes, for Warner, to the effect that he must pay the principal, or he would consider the contract void, and this was *shortly before* the defendant *Carver* came to buy the land. It appears by this testimony and the deed from Warner and wife, under and through which the defendants claim, that Warner had waived any forfeiture that could be claimed by reason of delay or failure to make prompt payment, and Holmes was still being indulged by Warner as to further time. It appears that *Phillips* called on Warner the 12th of November, and told him that he had bought the Holmes contract,

and asked him how much he owed him on it. Mr. Warner said he had nothing more to do with it; he had sold it to *Carver*. It appears by the testimony of the defendant *Rose Carver* that December 1, 1895, *Phillips* came to their house to see about the land that Holmes had a contract on; that he had bought the contract; that he said there was some money due, and he would send the money in two or three days; that she next saw him January 18, 1896, when he said "he had brought us up some money to pay on contract, and *Carver* told him he was altogether too late, as we considered the payment past due." The testimony shows some further ineffectual negotiations on the part of the plaintiff to induce the defendants to take the money, and that the defendants said they were under no obligation to take any money on the contract. However, the plaintiff counted out to them $117; and, upon their insisting that it was too late, he picked up the money, and they talked about a compromise. There was evidence tending to show that the plaintiff, *Phillips*, informed the defendant *Carver*, November 14, 1895, that he was ready to pay all sums due on the contract, and that the defendants on the 25th of November gave notice to Holmes that they had purchased from Warner the premises in question, and held his warranty deed therefor, "subject to contract of sale therefor to you dated November 23, 1893," and stating the time within which the several payments of principal and interest were to fall due, and demanding that he should pay said sum of $100, with interest, on said contract, at once, or they would declare said contract utterly void, and all payments thereon forfeited. It thus appears that at this date the defendants, as assignees of the contract, were insisting on its validity and performance on the part of the plaintiff. Their interest in the land was taken expressly subject to the provisions of the written contract to Holmes, which had been transferred, and was then held by the plaintiff, *Phillips;* and these provisions, and such de-

Phillips vs. Carver and wife.

mand of payment, in connection with other facts and circumstances in evidence, amounted to a valid and sufficient waiver by both Warner and the defendants of the default of payment of principal and interest that had then occurred.

The stipulation in the contract that if Holmes, the vendee, should fail to make any of the payments of purchase money at the time and in the manner specified, in such case the agreement should be henceforth utterly void, and all payments thereon forfeited, subject to be revived and renewed by the act of the vendor, or the mutual agreement of both parties, had the effect to render payment of the purchase money at the time and in the manner specified material to the contract. But whenever time is made essential, either by the nature of the subject matter and object of the agreement, or by express stipulation, or by a subsequent notice given by one of the parties to the other, the party in whose favor this quality exists (that is, the one who is entitled to insist upon a punctual performance by the other, or else that the agreement be ended) may waive his right, and the benefit of any objection which he might raise to a performance after the prescribed time, either expressly, or by his conduct; and his conduct will operate as a waiver when it is consistent only with a purpose on his part to regard the contract as still subsisting, and not ended by the other party's default. Accordingly, if either the vendor or the vendee has improperly and unreasonably delayed in complying with the terms of the agreement on his side, the other party may, by notice, fix upon and assign a reasonable time for completing the contract, and may call upon the defaulting party to do the acts to be done by him, or any particular act, within this period. The time thus allotted then becomes essential, and, if the party in default fails to perform before it has elapsed, the court will not aid him in enforcing the contract, but will leave him to his legal remedy. The notice cannot be an arbitrary and sudden termi-

nation of the transaction.  It cannot put an immediate end
to a pending dispute or negotiation as to the title.  It must
allow a reasonable length of time for the other party to
perform.  And, if it fails in any of these respects, it may be
disregarded, and will produce no effect upon the equitable,
remedial rights of the party to whom it is given.  The nat-
ure and object of the contract, the circumstances of the
case, and the previous conduct of the parties, are important,
and, indeed, controlling, elements in determining the reason-
ableness of the notice.  The notice, also, to be effectual in
making the time allotted an essential element of the per-
formance, must be express, clear, distinct, and unequivocal.
After time has been thus made an essential element of the
contract, by a reasonable notice given during the negotia-
tion concerning its performance, the notice and its effect
may be waived by the conduct of the party giving it; and
if the time is once allowed to pass, and the parties still go
on negotiating for the completion of the purchase, this con-
duct amounts to a waiver, and time *is then no longer essen-
tial.*  Pomeroy, Contracts, §§ 394–397.

The defendants acquired their rights in the premises by
the deed from Warner and wife, which stated that it was
made subject to a written contract for the sale of said land
to Levi Holmes November 23, 1893, with which contract
parties of the second part agreed to comply, and took said
deed and conveyance with full notice and knowledge that
said Holmes and the plaintiff were the owners of said prem-
ises, and had entered into possession of the same.  It further
appears that the sum of $15.05 was paid by Holmes on ac-
count of said contract, and received by Warner, April 20,
1895, and duly indorsed upon the said land contract, with
the understanding that the $50 principal would be paid at
a future date, with seven per cent. interest; that on Novem-
ber 23, 1895, the sum of $100, principal, and $15.05, interest,
became due, which amount was legally tendered to said

Warner and to said defendants as aforesaid. They stood in the place of Warner, and were bound and affected by all ·equities existing against him in respect to the premises. The provisions of the written contract for the sale of the land to Holmes, dated November 23, 1893, recited and referred to in said deed of October 9, 1895, amounted to a legal waiver by Warner, who executed the deed, and by the defendants, who accepted it, of all defaults of payment of principal and interest that had matured and were then past due on the ·contract; and it seems but just that their demand of the payment of the purchase money secured by said contract should have the like effect. These acts of waiver occurred prior to the time the defendants acquired their claim of title. It does not appear that Warner, or the defendants as his assignees, did anything after they had acquired their interest to fix the time of payment, or make it material or essential to the contract. It seems, therefore, that the plaintiff had not forfeited his equitable rights in the premises at the time he tendered to the defendants payment of the money due on the contract in December, 1895, and demanded of the defendants a conveyance of the premises.

The imperfect and anomalous condition of the pleadings, and the peculiar character of the issues developed, have re- ·sulted from the irregular course of pleading to which the parties have resorted. The matters set up in the complaint and answer are clearly material and important to a determination of the rights of the parties in and to the premises in dispute. They are in part of a legal, and in part of an equitable, nature; and, although not brought before the court by any regular or permissible course, evidence was directed to, and proper findings have been made on, all these subjects, so that no difficulty existed, in view of the findings of the trial court, of stating and adjudging the sums to be allowed or adjudged to each of the parties, and embracing them in a final judgment. It would doubtless have been

more in conformity with correct practice had the court, on motion before trial, required the pleadings to be reformed so as to have produced issues more in accordance with correct practice in actions of ejectment, in which there are legal and equitable controversies to be determined, but no attempt in that direction seems to have been made. It does not now appear necessary or essential to the ends of justice to set aside these findings, and put the parties to the expense and delay of another trial, in order to vindicate a mere matter of method or form of procedure or trial, when it is evident that the parties have had a fair investigation and determination of the matters in controversy. The court had jurisdiction of the parties, and authority to hear and determine the entire controversy. In fact, it would seem that the parties, respectively, have waived all right to object to the method of procedure adopted, and have substantially consented to it.

. We perceive no reason why, in the condition of the issues at the time of the trial, evidence might not have been properly received to show what sum remained due and unpaid from the plaintiff to the defendants for unpaid purchase money, and interest thereon, or what sum should be allowed to them for improvements made on the premises while they held and occupied the same, excluding the plaintiff from the possession thereof, or what sum should be allowed to the plaintiff by way of damages or for waste, as against the defendants. Evidence has been directed to, and proper findings have been made on, these and all subjects of controversy contained in the record, so that no practical difficulty existed, in view of the findings of the trial court, of stating and adjudging the sum which should be allowed or adjudged to each of the parties, and embraced in the final judgment. The situation was plain, and, we must assume, well understood by both parties, when the defendants' demurrer *ore tenus* was overruled. They took no steps to extricate the

case from the situation in which it had been placed by their failure to pursue the course of practice the law had provided, and we see no substantial objection to the result arrived at.

*By. the Court.*— The judgment of the circuit court is affirmed, with costs.