PEYER and others, Respondents, vs. JACOBS, Appellant.

*March 4—April 9, 1957.*

For the appellant there was a brief by *Johnson & DeBaufer* of Whitewater, and oral argument by *Easton Johnson.*

For the respondents Peyer there was a brief and oral argument by *Philip Weinberg* of Milwaukee.

For the respondent Thornton Realty Corporation there was a brief by *Edgarton & Hobbs* of Fond du Lac.

BROWN, J. Jacobs, the defendant and appellant, owned a farm and wished to sell it. He listed it for sale with one Hamilton, a salesman employed by defendant Thornton Realty Corporation. Hamilton approached Mr. and Mrs. Peyer, the plaintiffs, and interested them in the purchase. After talking over the terms on which Peyer would be willing to buy, Hamilton prepared an "Offer to Purchase" which the Peyers signed and which was then presented to Jacobs. On June 23, 1953, Jacobs accepted it in writing and so did Thornton Realty Corporation. The material provisions of this offer were:

The price is $30,000, $2,000 down payment, $13,000 on or before March 1, 1954, and a mortgage of $15,000 "to be secured by Thornton Realty Corp." Sale to be completed on or before March 1, 1954. Possession to be given March 1, 1954. The owner is to furnish an abstract of title showing merchantable title free and clear of all incumbrances except as noted.

The $2,000 down payment was duly made by the Peyers to Jacobs. On March 1st the parties met. The Peyers then had $8,100 in cash and testified that they were able to raise the balance of the $13,000 then payable but neither Thornton Realty Corporation nor anyone else had procured a mortgage

of $15,000. Jacobs did not then tender performance but extended "for a week or ten days" the time in which the required cash and mortgage might be found. Jacobs testified, further, that he gave additional extensions of the time of performance until well into April. There is no testimony that these extensions had any definite termination dates and it is evident that the parties just let matters run. While the deal was pending Jacobs asked the Peyers to lay a concrete cowyard which they did, and Jacobs, himself, painted and otherwise improved the farmhouse. On or about August 1, 1954, without notice to the Peyers nor demand on them to perform, nor tender of a deed to the Peyers, Jacobs sold the farm for $30,000 to a third party upon land contract. He refused the Peyers' demand to return the $2,000 down payment and the Peyers brought this action against both Jacobs and the Thornton Realty Corporation. Jacobs counterclaimed against the Peyers for damages of $3,000 allegedly sustained by reason of the Peyers' failure to perform their contract.

Trial was to the court. The judgment dismissed with costs the Peyers' action against Thornton Realty Corporation, dismissed Jacobs' counterclaim, and awarded to the Peyers from Jacobs their down payment of $2,000 with interest and $86.25 as compensation for the cowyard constructed by the Peyers at Jacobs' request.

Jacobs has appealed from all of the judgment but his prayer for relief in this court asks only that the complaint be dismissed as to him. The Peyers ask that the judgment be affirmed. Since no party opposes the dismissal of the action as to Thornton Realty Corporation, we affirm that part of the judgment as a matter of course.

Appellant submits that judgment in favor of the Peyers should be reversed because the Peyers were not prepared to pay the purchase price of $30,000 at any time within the extended period of the contract; that the Peyers told appel-

lant they could not perform and that this was an anticipatory breach of the contract which justified Jacobs' rescission without tender of performance; that the contract did not obligate Jacobs to procure a mortgage of $15,000 for the plaintiffs and he did not agree to do so. Appellant also contends that Thornton Realty Corporation was the Peyers' agent, not his, in the undertaking to effect a mortgage. The testimony on these issues was in conflict and, in general, the trial court's findings of fact were contrary to appellant's contentions. Affirmance of the judgment might be ordered on the ground that the findings are sufficiently supported by the evidence but, more certainly, there is an issue of law, arising from undisputed testimony, which must be resolved in plaintiffs' favor. It determines the controversy and makes the other contentions immaterial.

By granting extensions of time to perform the contract, which extensions were without specified termination date, Jacobs waived the contractual date of performance. The contract was thus kept alive by Jacobs' own action. While so alive Jacobs was required to be ready and able on reasonable notice to perform his part of the contract if the Peyers should perform theirs. Jacobs could, of course, bring this situation to an end by giving the Peyers reasonable notice of a date beyond which further delay would not be excused, but in the meantime the contract remained in force, binding upon both parties. When Jacobs sold the property to others, he put it out of his power to perform his obligation. Since the Peyers' breach, if there was any, had been waived by Jacobs' extension of the contract, the sale by Jacobs, without notice to the Peyers, without tender of performance on his own part and without demand by him for performance by the Peyers, was the first material breach. He may not profit from his own breach by retaining the down payment. His contention that the Wisconsin authorities, such as *Pierson v. Dorff* (1929), 198 Wis. 43, 223 N. W. 579, and *Woodman*

*v. Blue Grass Land Co.* (1905), 125 Wis. 489, 103 N. W. 236, 104 N. W. 920, permit him to do so are not in point because in those cases, as well as in *Schwartz v. Syver* (1953), 264 Wis. 526, 59 N. W. (2d) 489, it was the payer and not the receiver of the down payment who defaulted or who repudiated the contract.

In *Lockit Cap Co. v. Globe Mfg. Co.* (1930), 158 Wash. 183, 186, 290 Pac. 813, 814, the court considered such a situation and said:

"A waiver of past failures does not necessarily constitute a waiver of future defaults; and, while there can be no arbitrary forfeiture where delays have been acquiesced in, still a party, who by his conduct has not insisted upon a timely performance and has thereby waived performance within the time specified in the contract, may, nevertheless, thereafter declare a forfeiture or cancellation of the contract for delay, *provided he first makes demand for performance and grants a reasonable time therefor."* (Italics ours.)

The court then quoted 1 Black, Rescission and Cancellation (2d ed.), p. 623, sec. 219, as follows:

" 'Even where time is made the essence of the contract, this provision may be waived by the party for whose benefit or protection it is inserted, either expressly or by extending the time for payment or performance or by granting indulgence to the other party in this regard; and when such a waiver has been made, he cannot arbitrarily and summarily declare a forfeiture of the contract for delay, but must first demand payment or performance and give the other party a reasonable time and opportunity, after such demand, to comply.' "

Black illustrates the above quotation by the following example:

"Thus, although a purchaser of land has made default in paying agreed instalments of the price, yet if the vendor, by his subsequent course of dealing, has led the purchaser to believe that a forfeiture will not be insisted on, he cannot

suddenly declare a forfeiture without giving notice and an opportunity to pay the balance due."

We consider the trial court correctly determined that in these circumstances Jacobs must place Mr. and Mrs. Peyer *in statu quo ante* by returning the down payment and compensating them for the improvements they had made to the farm at Jacobs' request.

*By the Court.*—Judgment affirmed.