HAISLMAIER, Appellant, v. ZACHE and another, Respondents.

*October 1—October 27, 1964.*

For the appellant there were briefs and oral argument by *Bernard C. Westfahl* of Milwaukee.

For the respondents there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Roger S. Bessey* of counsel, all of Milwaukee, and oral argument by *Mr. Bessey.*

BEILFUSS, J. The determinative issue is whether time is of the essence of the contract.

In *Rottman v. Endejan* (1959), 6 Wis. (2d) 221, 225, 226, 94 N. W. (2d) 596, a case dealing with a contract for the purchase of land, the court stated:

"The law is well settled that time will not be regarded as of the essence unless it is made so by the terms of the contract or the conduct of the parties. *Long Investment Co. v. O'Donnell* (1958), 3 Wis. (2d) 291, 297, 88 N. W. (2d) 674, and *Zuelke v. Gergo* (1951), 258 Wis. 267, 271, 45 N. W. (2d) 690.

". . . This court in *Buntrock v. Hoffman* (1922), 178 Wis. 5, 13, 189 N. W. 572, held that 'time will not be regarded as of the essence of the contract merely because a definite time for performance is stated therein, without any further provision as to the effect of nonperformance at the time stated.' "

The defendant purchasers claim the contract was breached by plaintiff seller because he had not furnished an abstract at least fifteen days before the date set for closing.

The pertinent contract provisions are:

". . . the transaction is to be closed . . . on or before 9/1, 1961, or at such other time and place as may be designated in writing by the parties hereto. . . .

"The Seller shall furnish and deliver to the buyer for examination at least fifteen (15) days prior to the date set for closing, his choice of either:

"1. A complete abstract of title, made by an abstract company, extended to within twenty (20) days of the closing, said abstract to show the Seller's title to be marketable and in the condition called for by this agreement. The Buyer shall notify the Seller in writing of any valid objection to the title within ten (10) days after the receipt of said abstract and the Seller shall then have a reasonable time, but not exceeding ninety (90) days, within which to rectify the title (or furnish a title policy as hereinafter provided) and in such case the time of closing shall be accordingly extended; or

"2. An owner's policy of title insurance. . . ."

The default provisions are:

"Should the undersigned Buyer fail to carry out this agreement, all money paid hereunder shall, at the option of the Seller, be forfeited as liquidated damages, and shall be paid to or retained by the Seller, subject to deductions of broker's commission and disbursements, if any.

"Should the Seller be unable to carry out this agreement by reason of a valid or legal defect in title which the Buyer is unwilling to waive, all money paid hereunder shall be returned to the Buyer, and this contract shall be void."

The closing date was on or before September 1, 1961, or at such other time as the parties agreed upon. The abstract could not have been delivered before August 10th because of the provision that it must be continued to within twenty days of the closing. It was continued to August 18th—twelve days before the closing. The abstract was to have been delivered fifteen days before September 1st. It was delivered on August 25th and receipt acknowledged August 28th. The contract further provided that the buyer had ten days to raise objection to the title and the seller had an additional ninety days to rectify the title.

The default provisions contain no time limitations insofar as the seller's obligations are concerned. The default entitling the buyers to rescission would have to be a valid defect in the title. There is no claim of defect in the title. Clearly, time is not of the essence under the terms of the contract.

The defendant buyers contend that the conduct of the parties was such that time did become of the essence.

It appears without dispute that the defendants, Mr. and Mrs. Zache, wanted to purchase a larger home and had talked to the salesman, Peters, on several occasions about various houses before the plaintiff's property was consid-

ered. Peters knew the plaintiff's property was for sale and asked the plaintiff if he could show it and negotiate a sale. The plaintiff informed him he could and agreed to pay Barrett Realty Company, Peters' employer, $780 (two and one-half percent of the sale price) upon closing. Peters did all the negotiating with the Zaches and prepared the offer to purchase which the plaintiff accepted on July 18th.

To finance the purchase it was necessary for the Zaches to sell their home and to obtain a mortgage loan. Peters, without knowledge or participation by the plaintiff, obtained a listing agreement to sell Zaches' home at a list price of $22,900. The Zaches were able to obtain a mortgage loan conditioned upon a merchantable title to plaintiff's property. The loaning agency advised the Zaches that it would need two weeks to examine the abstract of title to complete the loan. Mr. Zache notified Peters of these negotiations but it does not appear that either Zache or Peters informed the plaintiff. As set forth in the statement of facts, late in July Mr. Zache asked Peters to obtain an extension of time on the closing transactions for plaintiff's property because the Zaches had not as yet received an offer to purchase. Mr. Zache claimed and Peters denied that Peters stated that could not be done without penalty. The Zaches did enter a contract for sale of their home on August 18th, with possession to be given September 1st, and later extended to September 15th.

On or about August 20th the Zaches requested permission to enter the property of the plaintiff to carpet the floors. Plaintiff gave permission. This request was five days after the date set forth in the contract for the delivery of the abstract.

The Zaches argue that they had to give up possession of their home on September 1st, that the loaning agency needed two weeks to pass upon the title of plaintiff's property and

that these factors made time of the essence and nondelivery of the abstract a breach of the contract entitling them to cancellation. Again it does not appear that either the Zaches or Peters notified the plaintiff of these time elements or an intention to cancel the contract until August 23d.

Where the contract does not expressly provide that time is of the essence notice fixing a reasonable time for performance must be given.

"A course of action lay open to the purchasers whereby they could have reasonably protected themselves against the contingency of being unable to secure possession by July 1st. This was to have given the vendors notice early in May fixing July 1st as the last date for closing and effecting change of possession, and stating that they would consider the contract rescinded if the sellers failed to perform by such date. None of the letters written by counsel for the purchasers is susceptible of being construed as such a notice. Because the purchasers failed to give any notice fixing a reasonable time for performance subsequent to May 1, 1957, the contract never terminated. *Peyer v. Jacobs* (1957), 275 Wis. 364, 367, 82 N. W. (2d) 202, and *Phillips v. Carver* (1898), 99 Wis. 561, 575, 75 N. W. 432. If such a notice had been given, the sellers might have been spurred into such action as paying the tenant a sum to vacate, or using the notice as a ground for the circuit court taking more-prompt action to decide the unlawful-detainer appeal and issue the writ of restitution." *Rottman v. Endejan, supra,* page 227.

Applying this quotation to the facts herein, the Zaches were required to give the plaintiff notice fixing a reasonable time. Because of their failure to do so the contract did not terminate.

It is urged that Peters was the agent of the plaintiff and that notice to Peters was notice to the plaintiff. Under the facts of this case as to the crucial negotiations, Peters was the agent of the Zaches and not of the plaintiff. Peters knew

the Zaches wanted to purchase a home and discussed it with them on several occasions before the plaintiff was ever contacted. The plaintiff did not seek out Peters nor the defendants Zaches. Peters contacted the plaintiff on behalf of the Zaches. The plaintiff had no part of nor even knowledge of the contract between the Zaches and Peters for the sale of their home. All of the terms, negotiations, and time elements of the sale of the Zache home were negotiated by the Zaches, Peters, and the purchaser. Under these facts the plaintiff cannot be bound by the knowledge of Peters.

Resolving all of the testimony conflicts in favor of the defendants Zaches, we conclude there is not sufficient credible evidence in the record nor reasonable inference therefrom to warrant a jury finding that the conduct of the parties made time of the essence of the contract or that the contract was breached by the plaintiff seller.

The plaintiff was ready, willing, and able to perform the contract within a reasonable time. The Zaches breached the contract by refusing to carry it out.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for the plaintiff upon the promissory note of July 18, 1961.