GONIS, Respondent, v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

*No. 634 (1974). Argued November 24, 1975.—Decided December 19, 1975.*
(Also reported in 236 N. W. 2d 273.)

952

954

For the appellant there were briefs by *Quarles & Brady*, attorneys, and *Peter W. Bunde, Ronald L. Wallenfang*, and *Peter C. Karegeannes* of counsel, all of Milwaukee, and oral argument by *Mr. Bunde*.

For the respondent there was a brief and oral argument by *Francis X. Krembs* of Milwaukee.

ROBERT W. HANSEN, J. On appeal two issues are raised by the appellant. The first is whether time is of the essence, and the second is whether respondent failed to perform conditions precedent to the arising of appellant's obligations under the commitment.

*Time of the essence?*

The basic dispute between the parties here is whether or not time was of the essence as to the loan being made on or before the closing date of April 15th in the commitment.[1] In determining such issue, the court is to look both to the terms of the contract and to the acts of the parties.[2]

As to the terms of the contract or commitment, while time is nowhere in it expressly declared to be "of the essence," several provisions do set forth both the importance and consequences of completing the loan before the prescribed closing date. The commitment provides for the payment of $26,000 liquidated damages by re-

---

[1] *See:* 6 Williston, *Contracts* (3d ed.), p. 181, sec. 846, the author stating: "When it is said that time is of the essence, the proper meaning of the phrase is that the performance by one party at the time specified in the contract or within the period specified in the contract is essential in order to enable him to require performance from the other party."

[2] *Zuelke v. Gergo* (1951), 258 Wis. 267, 271, 45 N. W. 2d 690, this court holding: "The importance of time of performance depends upon the terms in the contract and the circumstances appearing from the acts of the parties." *See also: Haislmaier v. Zache* (1964), 25 Wis. 2d 376, 381, 130 N. W. 2d 801; *Rottman v. Endejan* (1959), 6 Wis. 2d 221, 225, 226, 94 N. W. 2d 596.

spondent if appellant did not acquire the loan "on or before the expiration date of the commitment." If the loan was not acquired by the closing date, or in the event of default prior to said date, the obligations of appellant under the commitment "shall cease." The commitment provides that the acquisition of the loan by appellant "shall take place on April 15, 1972." The commitment provides that any extension of time for closing beyond the April 15th date is a matter "in our [the appellant's] sole discretion," and any such extension of time must be in writing by appellant "if the conditions of this commitment have not been met by said date."

As to the circumstances appearing from the acts of the parties, appellant sees four facts or factors as weighting the scales in favor of finding time not to have been of the essence. They are: (1) Respondent's belated unconditional acceptance of the terms of the commitment. However, the date set for signing the commitment cannot thus be fully equated with the closing date set for the loan being made under the commitment. (2) Activities of respondent and his attorney before April 15th showed no "urgency." What such activities, however, do reveal is a renewed importuning for the granting by appellant of an extension of time as to closing the loan, to which appellant made no response. Silence under these circumstances could hardly have been reassuring. (3) There were no oral or written statements that "time was of the essence." That is true, but does not preclude evaluating the circumstances arising from the acts of the parties as to whether time was, in fact, considered by them to be of the essence. (4) Respondent's signing on April 18th the commitment with National Life, specifically referring to the letter from respondent's attorney to appellant stating that: "We waited throughout the day on April 17 in the hope that we might receive advice from you. . . ." Such evidence of waiting for two days after the deadline is

a circumstance to be given weight, but here we do not see it, standing as it does so nearly alone, as sufficient to outweigh circumstances indicating that time was here considered by the parties to be of the essence.

Without repeating the matters of contact and correspondence between the parties, set forth in the statement of facts, we conclude that it was abundantly and repetitively made clear to respondent that the transaction between the parties would have to be closed on April 15, 1972, absent an extension of time within which to close which could be granted only by appellant. It is evident that respondent, or his attorney for him, sought to have the time for closing extended, with the date of April 25th suggested by respondent as such extended date. Given such request, it is puzzling that appellant did not either extend the date or, in the alternative, state that it was not insisting, as it had the right to do, on the transaction being completed by April 15th. On April 21, 1972, in a letter addressed to respondent's attorney, one of appellant's attorneys acknowledged that: "Perhaps we were remiss in not replying to your request for a formal extension. . . ." Something more than being remiss is involved. By neither extending the time for closing nor making clear that it did not consider time for closing of the essence, the appellant gave firm foundation for the trial court's finding and conclusion that the parties here did indeed consider time as to closing to be of the essence.

Respondent views the trial court holding that time was here of the essence as a finding of fact that is to be sustained unless it is ". . . contrary to the great weight and clear preponderance of the evidence."[3] The findings of the trial court as to the circumstances or acts of the parties which indicate time to be of the es-

---

[3] *See: Afram v. Balfour, Maclaine, Inc.* (1974), 63 Wis. 2d 702, 708, 218 N. W. 2d 288.

sence are such fact findings. However, the conclusion that time was here of the essence is a conclusion of law, to be sustained ". . . only if it is supported by the preponderance of the evidence . . . ."[4] The difference in the two tests on review is not here significant, for the holding of the trial court that time was here of the essence meets even the higher test with room to spare.

*Conditions precedent?*

Appellant argues that, even if time was of the essence as to the closing date of April 15th, the respondent failed to discharge by that date ". . . his duty to perform the conditions precedent to New York Life's obligation to disburse." This is to argue that respondent, not the appellant, was in breach of the agreement of the parties in the commitment. Such claimed failures to discharge a duty owed are itemized by appellant in its brief to include: (1) Failure to provide tenants' acceptance and estoppel letters; (2) errors in assignments of lessors' interests; (3) sending of a revised title report on April 14th; (4) failure to submit hazard insurance policies in form and issued by companies satisfactory to appellant; (5) failure to submit certification as to no change in material representations made; and (6) no certification of compliance with applicable laws, rules and regulations.

As to such claim of the respondent having breached the agreement, the trial court held that respondent was not in breach because ". . . The evidence indicates that the conditions referred to could have been completed within the time limitations of the original application closing date on or before April 15, 1972." This holding is supported by the evidence. As to tenants' acceptance or estoppel letters, such letters were delivered by respondent to the broker in February, 1972. The sole contention

---

[4] *Id.* at page 708.

on appeal is that there is no evidence such letters were received by appellant. Clearly, such letters could have been delivered prior to the closing date, or at time of closing. As to alleged errors in assignments of lessors' interests, those cited were not so substantial that correction could not have been made before or at closing. As to delivery of the revised preliminary title report, it is not disputed that it was completed before the closing date, and could have been delivered on such date. No allegation is made that it was inadequate. As to the hazard insurance policy, the main argument is that premiums had not been paid. It clearly was intended that respondent use part of the money loaned to pay the premium on such policy,[5] and this is commonly done at the time of closing.[6] As to certifications by respondent

[5] On February 15, 1972, the attorney for Advance Mortgage stated in a letter to respondent's attorney: "Some time prior to closing, you should procure a copy of the hazard insurance in an amount of not less than $1,300,000, so that it may be sent to New York Life for their approval; then at the time of closing, the original policy with an appropriate mortgage endorsement may be delivered."

[6] *See:* 6 Williston, *Contracts* (3d ed.), pp. 387, 388, sec. 881, the author stating: "A mortgage can be drawn from the buyer to the lender before the land is conveyed; then if the buyer and seller and lender meet at the same place, the seller can be paid his money while simultaneously he delivers a deed to the buyer, and the buyer delivers a mortgage to the lender. In the same way, if the buyer's money is needed to free the title which the seller must offer, a simultaneous execution of the transaction is possible if the person holding the title or encumbrance is willing to aid the seller in carrying out the bargain, and this should be held to be sufficient.

"The accuracy of these observations is indicated in a typical case where the court said:

"'. . . What each party is entitled to is that the other shall perform at the same instant of time that he does, and in contemplation of law that is exactly what takes place at every real estate settlement, although in fact the details of the settlement may

as to no material changes in representations made and compliance with applicable laws, such statements by respondent could easily have been supplied at the time of closing, as the trial court found. There is no allegation that respondent could not meet these conditions. Viewing the duties listed as conditions precedent,[7] we agree with the trial court that, where the respondent could have fulfilled the conditions by or on the original closing date, his not having done so earlier is not controlling where a closing was not attempted on the closing date, or such closing date extended.[8] The trial court's holding is that, in fact, the appellant breached the agreement by not closing or extending the time within which to close. We agree.

occupy one or more hours or even days in the complete performance. This is the theory upon which all so-called "three-cornered" settlements rest, and it is sound in principle as well as essential in practice. It does not depend for its validity upon custom.' " (Quoting Kadow v. Cronin (1922), 97 N. J. L. 301, 302, 303, 116 Atl. 427.)

[7] See: Nixon v. Farmers Ins. Exchange (1972), 56 Wis. 2d 1, 4, 201 N. W. 2d 543, this court holding: ". . . ' "Condition precedent" is one calling for performance of some act after the contract is entered into on performance of which the obligations depend.' " (Quoting 5 Williston, Contracts (3d ed.), pp. 142, 143, sec. 666A.

[8] See: 6 Williston, Contracts (3d ed.), p. 91, sec. 832, footnote 1, the author stating: "Excuses for non-performance of conditions precedent are:

". . .

"6. Facts showing that even if the condition were performed the promise would not have been kept; and that for this reason only the condition had not been performed, Miller v. Schwinn, 113 F2d 748 (CA DC) the court held that no action could be maintained for breach of a condition to convey certain properties free from encumbrances when it could be affirmatively shown that the promisor would not have performed even if the condition had been satisfied; . . ."

It follows, as the trial court held, that, once the closing date set in the commitment agreement had been passed, the respondent was excused from performance and entitled to rescind.[9] With the default found on the part of the appellant, and the right to rescind on the part of the respondent arising as a result, it follows that appellant is not entitled, on a claim of breach of duty owed, to recover the liquidated damages provided in the event of default by the respondent. On the basis of its findings of fact, here affirmed, the trial court properly concluded that ". . . failure on the part of the defendant [appellant] to close the mortgage loan within the prescribed time or to extend the time for closing which it had a right to do under the agreement, gave rise to the plaintiff's [respondent's] right of rescission which he exercised on April 19, 1972."

*By the Court.*—Judgment affirmed.

[9] *See: De Sombre v. Bickel* (1963), 18 Wis. 2d 390, 396, 118 N. W. 2d 868, this court stating: "When time is made of the essence of the contract, either by its terms or by the conduct of the parties, late performance does not fulfil the requirements of the contract and gives rise to a right in the innocent party to rescind the contract or relieves him from performance."