STORK, and another, Plaintiffs-Appellants, v. SANDRA A. FELPER, a/k/a Sandra Felper, a/k/a Sandra A. Griswold, and others, Defendants-Respondents.

Court of Appeals, District IV

*No. 77–647. Submitted on briefs July 21, 1978.— Decided September 8, 1978.*
(Also reported in 270 N.W.2d 586.)

408

For the plaintiffs-appellants the cause was submitted on the briefs of *Douglas W. Kammer, Douglas W. Krammer, S.C.,* of Portage.

For the defendants-respondents the cause was submitted on the brief of *Stephen J. Nicks, Nicks and Similey,* of Portage.

Before GARTZKE, P. J., BABLITCH and DYKMAN, JJ.

BABLITCH, J.   The facts were stipulated by the parties prior to the hearing on both parties' motions for summary judgment.  On November 16, 1976, appellants Stork agreed to purchase and respondent Sandra Griswold agreed to sell a dwelling located in Columbia County.  Griswold accepted a standard offer to purchase form No. WB–1C on that date, specifying an occupancy date of January 2, 1977.  According to the form, time was of the essence with respect to physical occupancy.  Though the closing date in the original offer was December 20, 1976, a hand written notation appears at the foot of the form as follows: "physical occupancy and closing to be same day (January 2, 1977)," immediately beneath which appears Griswold's signature.  In their stipulation, both parties agree that January 2 was the agreed upon closing date.

The offer to purchase contains the following provision:

"In the event the premises shall be damaged by fire or elements prior to the time of closing, in an amount not more than 10 per cent of the selling price, the seller shall be obligated to repair the same.  In the event such

damage shall exceed such sum, this contract may be cancelled at the option of the buyer. Should the buyer elect to carry out this agreement despite such damage, such buyer shall be entitled to all of the credit for the insurance proceeds resulting from such damage, not exceeding, however, the purchase price."

On December 3, 1976, a fire destroyed the dwelling. Plaintiffs were informed of this on the same day. On December 31, the plaintiffs went to the office of the selling broker and signed a document which read, in part, "This to extend closing date of December 20, 1976 . . . to January 31, 1977." This document contained a signature line for the seller, but was never signed by her. On the same day the selling broker telephoned and wrote to the listing broker to inform him of the existence of the document executed by the plaintiffs and to request that the listing broker transfer the $2,000 earnest money into an interest bearing account. The parties have not stipulated as to whether this requested transfer was ever made, but it is apparent from the record that the earnest money was never returned to the plaintiffs. It is not stipulated whether the listing broker communicated this information and request to the seller, nor what response she may have made.

The parties did not close the real estate transaction on January 2, 1977. No abstract of title or title insurance policy was ever tendered by the sellers, as specified in the purchase contract, or demanded by buyers.

Griswold carried a home owner's insurance policy through the American Family Insurance Company. On January 12, 1977, Griswold "settled" with American Family for $25,180 for damage to the premises, and for an unstated amount representing loss of contents in the dwelling. Although the appellants did not learn of this settlement until January 27, 1977, their attorney wrote to respondent Otis Griswold, husband of the owner of

the premises, on January 14, 1977, informing him of appellants' claim to insurance proceeds. On January 18, 1977, Griswolds' attorney wrote to Storks' attorney "formally repudiating" the contract. On January 27, 1977, after the Storks learned of the insurance "settlement," their attorney "immediately notified" Griswolds' attorney that the plaintiffs wished to go through with the sale.

This action for specific performance was commenced on January 31, 1977, though the pleadings were not served until February 17, 1977. Thereafter, negotiations with the insurance company resulted in an additional payment by it of some $6,000. The total insurance proceeds paid were within $100 of the originally agreed upon purchase price.

On December 30, 1977, the county court entered an order denying Storks' motion for summary judgment, granting Griswolds' motion for summary judgment, and dismissing the complaint for specific performance. The court found that since the parties failed to close on January 2, 1977, the offer to purchase contract terminated on that date. We reverse, and remand for further proceedings.

The issue is whether, under this contract, the buyer is required to exercise his option either to cancel the contract or to proceed with closing by the originally contracted for closing date, regardless of when a fire destroying the premises occurs. We hold that he is not. There remains a factual issue of whether these buyers exercised their option within a reasonable time after the fire. As to this issue, we believe that the stipulated facts are insufficient for this court to make a determination.

I. Was time of the essence with respect to closing?

Respondents urge that because time was expressly made of the essence with respect to occupancy, and be-

cause the occupancy and closing dates were the same, time was also of the essence as to closing. We reject this proposition. It is well established in the State of Wisconsin that time is not of the essence unless it is expressly made so by the terms of the contract, or by the conduct of the parties. *Haislmaier v. Zache*, 25 Wis. 2d 376, 130 N.W.2d 801 (1964), *Long Investment Co. v. O'Donnell*, 3 Wis.2d 291, 88 N.W.2d 674 (1958), *Zuelke v. Gergo*, 258 Wis. 267, 45 N.W.2d 690 (1951), *Buntrock v. Hoffman*, 178 Wis. 5, 189 N.W. 572 (1922). While occupancy and closing may occur on the same date, they are separately treated under the contract. The fact that one party, after the original offer to purchase was typed, determined that closing should take place on the same day occupancy was given to the buyers, and that the other party acquiesced in that determination, is not sufficient, in our opinion, to extend to the closing date the separate provision in the occupancy clause that time was of the essence. The language "time is of the essence with respect to occupancy" is a provision inuring to the benefit of the buyer, is a benefit which may be waived, and was waived by the buyers.

Nor do we agree with respondents' contention that the buyers' attempt to extend the closing date to January 31, 1977, was a recognition or admission that time was of the essence with respect to closing. On the contrary, that action might well be viewed (though appellant does not so urge at this time) as the buyers' notification to seller that they intended to elect to proceed with the transaction pursuant to the fire provision of the contract. While conduct of the parties can be used to show whether time was of the essence in the minds of the parties, *Gonis v. New York Life Ins. Co.*, 70 Wis. 2d 950, 236 N.W.2d 273 (1975), *Zuelke, supra*, this record reveals no such conduct on the part of either of them.

Rather, the buyers' failure to demand and the seller's failure to provide an abstract of title or a title insurance policy not less than 15 days prior to January 2, as the contract required, is conduct evincing that the time of closing was not considered to be of the essence by either party.

"Where the contract does not expressly provide that time is of the essence notice fixing a reasonable time for performance must be given." *Haislmaier v. Zache,* 25 Wis.2d 376, 384, 130 N.W.2d 801 (1964). Since the seller did not give such notice to buyers, the contract never terminated. *Peyer v. Jacobs,* 275 Wis. 364, 367, 82 N.W.2d 202 (1957), *Rottman v. Endejan,* 6 Wis.2d 221, 94 N.W.2d 596 (1959), *Haislmaier v. Zache, supra,* p. 384.

Finally, respondent contends that the buyers' failure to tender the purchase price prior to commencing this action for specific performance precludes them from maintaining the action. We disagree. The seller repudiated the contract. Where one party to a contract has repudiated it, tender is not a condition precedent to instituting an action for specific performance. *Rottman v. Endejan,* 6 Wis.2d 221, 229, 94 N.W.2d 596 (1958).

II. Buyers entitled to reasonable time to elect.

The contract gives rights to both parties in the event of a fire prior to closing, but is silent on the time within which these rights must be exercised. These rights depend upon circumstances wholly outside the control of either party: the occurrence of a fire prior to closing, and the extent of damage to the premises as a result of that fire.

There may be circumstances in which neither party would be able to determine, prior to the closing date, what his rights and obligations under this provision of

the contract would be, since they are conditioned on a determination of the extent of damage. That determination might well require more time than the time remaining between the event of the fire and the date originally established for closing. In such a case, the inability of the parties to establish the percentage of damage to the premises prior to the contractual closing date would not justify a cancellation of this contract, which clearly contemplates that the transaction shall be concluded, as a matter of right, upon the completion of the repairs. Similarly, if it were impossible for the seller to complete the agreed upon repairs prior to the originally contracted for date of closing, the buyer could not properly claim a right not given by the contract to cancel the transaction because of seller's failure to do the impossible.

These mutual rights—the right of the seller to repair and compel transfer of the premises if the damage is less than 10 percent, and the buyer's right either to cancel or go through with the deal if the damage exceeds 10 percent—would be empty rights without the correlative right to exercise them within a reasonable time. The only reasonable construction of this language is one which frees it from the shackles of a closing date rendered meaningless by the occurrence of a fire.

Where, as here, the extent of the damage was clearly more than 10 percent, entitling the buyer to proceed or cancel at its option, the same considerations of reasonableness apply. The benefit of the bargain granted to the buyer by this contract would be worthless without sufficient time to acquire information necessary for him to assess his situation. In making an intelligent election the buyer may need to determine the extent of the damage, the feasibility, cost, and length of time required to rebuild or repair, the market value of the premises, whether he can obtain financing to complete the transaction, whether the premises are insured, in what

amount, the likelihood of prompt settlement, and perhaps a host of other details. We reject respondent's assertion that a buyer to whom the benefit of this contractual provision has been granted is required to act blindly, and without a reasonable time to evaluate that benefit. As the Wisconsin Supreme Court said in *Lee v. Wisconsin Physicians Service (WPS)*, 76 Wis.2d 353, 359, 252 N.W.2d 24 (1977) :

" 'In ascertaining the meaning of a contract, the court may look to the consequences which would result should it adopt one construction as opposed to another, because where there is ambiguity the more reasonable meaning should be given on the probability that persons situated as the parties were would be expected to contract in that way as opposed to a way which works in unreasonable result. *Wisconsin Employment Relations Bd. v. Gateway Glass Co.* (1953), 265 Wis. 114, 60 N.W.2d 768. While a court cannot engage in equitable redrafting of contracts, a construction which makes a contract reasonable, fair and best will be given over one making the contract unusual or extraordinary, if equally consistent with the language used. *Bank of Cashton v. La Crosse County Scandanavian Town Mut. Ins. Co.* (1934), 216 Wis. 513, 257 N.W. 451.' "

We hold that the buyer has a reasonable time after the fire to exercise his right to cancel or to proceed with the contract, and that he is not required, under the terms of this contract, to exercise that option at or prior to the closing date.

III.  Did buyers act within reasonable time?

Respondent asserts that the buyers had ample time from the fire on December 3 to the originally scheduled closing date on January 2 to intelligently exercise their option. Appellants assert that they exercised their option in an expeditious manner, and well before they had all of the insurance information available to them.

Whether these buyers acted within a reasonable time is for the trial court to determine, in light of all the facts and circumstances following the fire on December 3, 1976. We are unable, on the basis of the skeleton of stipulated facts this record provides us, to make that determination.

*By the Court.*—Reversed and remanded.