MULLIGAN, Respondent, vs. ALBERTZ and wife, Appellants.

*April 10 — April 25, 1899.*

*Contracts: Specific performance: Evidence: Mental capacity: False representations.*

1. An action for specific performance of a contract is an application to the judicial discretion of the court, controlled and governed by the principles and rules of equity, and the court must be satisfied that the claim for a deed is fair, just, and reasonable, and that the contract is equal in all its parts and founded on an adequate consideration, before it will interpose its extraordinary assistance.

2. In an action for the specific performance of a contract for the exchange of land, it appeared, without dispute, that there was a taint of insanity in the defendant's blood; that he used liquor excessively; that his countenance was bloated; and that he was extremely nervous and incoherent of speech. Three physicians whom he consulted and a number of his friends testified that in their opinion he was incompetent to transact business. On the other hand several witnesses, who saw him occasionally, thought he was sober and competent to transact business, while others, who saw him about the time of the contract, testified that he appeared to be in his right mind and qualified to transact business. *Held*, that a finding of the trial court, that the defendant was not incompetent to make the contract sought to be specifically enforced, at the time it was executed, was opposed to the great weight of the evidence.

3. To make an agreement valid requires the assent of the understanding of the parties, and such assent presupposes physical power, moral power, and a serious and free use thereof.

4. By the contracts on which the action was founded, the defendant was to convey to plaintiff a farm valued at $22,000, incumbered for $13,500, in consideration of a saloon property valued at $14,000 and $8,000 in money, the money payment being considered the difference in value of the two properties. The court by its judgment deducted the cash payment from the incumbrance on the defendant's lands, and the difference, $5,500, was adjudged a lien on the lands to be conveyed to defendant by him. By the weight of testimony plaintiff's property was not worth more than $5,000 to $6,000. *Held*, that the transaction left the advantage too much on one side to appeal to conscience, and came directly within the rule that a contract will not be enforced in equity when there are indications of overreaching and undue advantage.

5. Where defendant testifies that representations of value were made, and he is supported by the inherent probabilities of the case, and the representations are material and such as he had a right to and did rely upon, and are false, they operate as a fraud upon the defendant's rights and ought not to receive the sanction of a court of equity.

6. Whether a representation as to value is to be regarded as a mere expression of opinion, or as an absolute representation of fact, it is a circumstance proper to be considered with the other facts in the case, on the question of decreeing specific performance.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Reversed.*

Action for specific performance of contracts to convey lands. *Henry W. Albertz* was the owner of a farm of 220 acres near Oconomowoc, in Waukesha county. Plaintiff was the owner of a saloon building and contents in the city of Waukesha. On August 25, 1897, *Albertz* and wife made a written contract in which they agreed to convey to plaintiff their said farm and certain personal property for the sum of $22,000, to be paid as follows: $14,000 by a conveyance to them of plaintiff's saloon property, and $8,000 in cash, "on or before ten days after date." At the same time plaintiff and wife made a written contract in which they agreed to convey the saloon property, and a stock of liquors described, to *Albertz* for the sum of $14,000, to be paid as follows: "One dollar at the execution and delivery hereof, and the balance to be paid by the execution and delivery by the parties of the second part to the party of the first part of his farm in sections 35 and 36, in the town of Oconomowoc, pursuant to the terms of a certain contract by and between the parties hereto of this date, on or before ten days after this date." Both contracts contained a clause that "it is distinctly agreed and understood, by and between the parties hereto, that if the said party of the second part should fail to make any of the payments of purchase money above specified, at the time and in the manner above speci-

fied, in such case this agreement shall be henceforth utterly void," etc. Neither party made or tendered performance of the contract within the time specified. Plaintiff thereafter commenced this action. In his complaint he set up the two contracts, and alleged the performance of the conditions therein on his part, and the tender of the deed and money mentioned, and the refusal of defendants to accept the same or to execute the deed of their farm. The defendants answered separately. The defendant husband, among other things, alleged that plaintiff fraudulently represented his property to be worth the sum of $14,000, when it was not; that the defendant came from insane stock; that his mind was weak and unsettled, and easily misled and deceived; that he was given to the excessive use of intoxicating liquors; that he was wholly unfit and incompetent to enter into said agreements; that his farm was heavily incumbered, to plaintiff's knowledge; and that being unable, within the ten days, to clear the title, he was unable to carry out the contract. The answer of the wife covers substantially the same ground.

A trial was had, and the court decided that the plaintiff was entitled to specific performance. The testimony not being clear as to the amount and character of the liens upon defendant's farm, he then made an order of reference to ascertain the facts. The referee reported that there were mortgages and liens against the property to the amount of $13,572.73, and a life annuity of $75 for the support of an insane brother of the defendant *Henry.* Upon the coming in of this report, the court made findings to the effect that the contracts in question had been duly executed and delivered; that the plaintiff had performed the conditions on his part; that he had tendered a deed of his premises, and also stood ready to make the cash payment of $8,000; that defendants refused to carry out the contract on their part without cause or justification; that plaintiff was ready to deliver his deed and pay the money within the ten days

provided in the contract, but that it was never demanded; that time was not of the essence of the contracts or made so by express agreement, but performance was delayed by defendants by one excuse and another purposely, and they led the plaintiff to believe they would perform until after the ten days had expired; that plaintiff made no fraudulent rep· resentations as to the value of his property; that the defendant *Henry* was not incapacitated to make the contract; that there was no mistake or misrepresentation as to the value of the property, but that the values placed in the contract were first suggested by *Albertz;* that the $8,000 cash payment was deemed to be the difference between the values of their respective properties; that all of the liens and mortgages were due and payable except one mortgage of $3,140, and that suit had been commenced to foreclose all of the mortgages except one. As conclusions of law, the court found plaintiff entitled to specific performance; that, upon payment of the liens and mortgages mentioned, he was entitled to a lien back on the premises he was to convey for $5,572.73, and interest from June 24, 1898, and to secure the payment of the $75 annually mentioned. A judgment entered pursuant to these findings is sought to be reviewed on this appeal.

*John A. Kelly,* attorney, and *C. H. Van Alstine,* of counsel, for the appellants.

For the respondent there was a brief by *Ryan & Merton,* and oral argument by *T. E. Ryan.*

BARDEEN, J. An action for the specific performance of a contract is an application to the sound discretion of the court. It does not come as a matter of course. The jurisdiction to compel it is not compulsory. "A court of equity must be satisfied that the claim for a deed is fair and just and reasonable, and the contract equal in all its parts and founded on an adequate consideration, before it will inter-

pose with this extraordinary assistance." *Williams v. Will-iams,* 50 Wis. 311; *Combs v. Scott,* 76 Wis. 662; *Docter v. Furch,* 91 Wis. 464; *Dewey v. Spring Valley L. Co.* 98 Wis. 83. But this discretion is not one to be exercised at the mere will and pleasure of the judge. It must be a judicial discretion, controlled and governed by the principles and rules of equity. Its exercise therefore depends upon the existence of a multitude of facts, events, and incidents surrounding the transaction, from which the court is to determine the superiority of the equitable over the legal right. When these conditions and circumstances are clearly proven, and are such as equity regards as essential to the administration of its peculiar modes of relief, specific performance will be granted. These conditions and incidents are thus stated in Pomeroy, Cont. § 38: " The contract must be certain, unambiguous, mutual, and upon a valuable consideration; it must be perfectly fair in all its parts; free from any misrepresentation or misapprehension, fraud or mistake, imposition or surprise; not an unconscionable or hard bargain; and its performance not oppressive upon the defendant. Finally, it must be capable of specific performance through a decree of the court." A great multitude of cases have arisen in which these principles have been applied, as will be seen by reference to the note to this section. The most important of the conditions named is the element of fairness and equality in the terms of the contract in its operation upon the defendant. One of the most beneficial principles in the administration of equity is that he who seeks equity must do equity. Its practical operation has been such as to resist and counteract every possible circumstance and incident of unfairness, inequality, and inequity. It requires the complaining party to stand in conscientious relations with his adversary to the extent, at least, that his demand is fair and just, and that the relief sought shall not be oppressive or hard upon him. See *Kuelkamp v. Hidding,* 31 Wis. 503.

When we come to test the results of the recovery in this case by the principles stated, we are met with some very significant circumstances. It was insisted by defendants that *Albertz* was weak-minded; that there was a taint of insanity in the family; and that, for more than two years prior to the execution of these contracts, he was a drunkard, and actually incapable of attending to his affairs. The court found that he executed the contract understandingly, and that he was not incapacitated by insanity, undue influence, or use of intoxicating liquors. The proof shows that his parents were first cousins. Seven children were born to them. Two died in infancy; two were insane and in the asylum; another, a sister of the defendant, was under guardianship as an insane person. The contracts in suit were executed on August 27, 1897. The testimony is undisputed that, for five years prior to this time, *Albertz* had been in the habit of drinking intoxicating liquor, and during the two years next before he had drank from a quart to a quart and a half of whiskey daily. Some time during the month of August he consulted Dr. Rice in regard to his condition. The doctor found him on the verge of delirium tremens. His hands trembled, his will power was weakened, and his speech was rambling and incoherent. In his opinion, the excessive use of alcohol by a person with a hereditary tendency to insanity would undoubtedly lead to dementia; that a man in his condition could not act with cool judgment, and, according to his recollection, *Albertz* was not in a condition to do any business. Dr. Hadley also saw him in August, and described his condition. His conversation was disconnected, and it was impossible for him to keep his mind upon one subject for any length of time. In his opinion he was not in a condition to understand or transact business intelligently. *Albertz* was taken to the Keeley Institute in October following. Dr. Vincent, the attending physician, found his mental condition exceedingly bad. His stomach was

badly diseased, and he suffered from extreme nervousness. He was then unfit to do business, and not responsible. In addition to the medical testimony, that of a number of friends and acquaintances was presented. They all agree that he was weak-minded, much given to the use of liquor, rambling and distracted in conversation, and queer in his actions. Their conclusion, from his mental condition, was that he was incompetent to transact business. On the part of the plaintiff, several witnesses were produced who saw him occasionally, and thought he was sober and competent to transact business. Others who saw him about the time the contract was made say that he appeared to be in his right mind, and qualified to do business.

We have made a careful study and review of all this testimony, and, while there is some that supports the court's conclusion, we are convinced that that conclusion is decidedly opposed to the great weight thereof. The testimony of the two doctors who examined and treated him within a short time of the making of these contracts is of considerable significance. They were skilled in their profession, and much better qualified than any other witnesses to judge of his mental condition. The taint of insanity, the undisputed fact of excessive use of liquor, extreme nervousness, incoherence of speech, and bloated countenance, are all circumstances unrebutted. While it may be true that *Albertz* may have appeared sober on the day the contract was executed, that fact alone will not purge the transaction. The inquiry is, Was he in such mental condition as to fully understand and appreciate the force and effect of the bargain he made? It is unnecessary to go beyond the record to search for reasons. The facts before detailed speak for themselves. They must have been evident to the plaintiff. A man on the verge of delirium tremens cannot hide his personality. It intrudes itself in every act and look. It proclaims itself in speech and in deed, and requires no ex-

pert to identify it. When these conditions exist, a person dealing with the diseased subject must be on his guard. Our conclusion is that *Albertz* was not in such mental condition as to be able to fairly understand the facts of the transaction, and that the plaintiff must have known it.

To make an agreement valid requires the assent of the understanding of the parties. This implies the exercise of reason and deliberation. As stated by Judge Willard (Willard, Eq. Jur. 170): "Every true consent supposes, first, a physical, second, a moral, power, and, third, a serious and free use of them." When these elements do not co-exist, a court of equity seldom lends its power to its enforcement. In addition to the matter referred to, we are led to consider the one-sided character of the contracts, and the harsh and oppressive results to the defendants. Under the court's judgment, plaintiff has the defendants' farm and a lien of over $5,500 on his own premises. The defendants have the plaintiff's saloon property, which, according to several of the witnesses, would not sell for sufficient to pay plaintiff's lien. In other words, as counsel argue, plaintiff has both properties and defendants have nothing. This result is reached by the court in adjudging the supposed equities between the parties. According to the findings, there were no representations of value made. The $8,000 plaintiff was to pay was considered to be the difference in value between the farm and the saloon property. Defendants' farm was incumbered to the amount of $13,572.73, besides the life annuity. He deducts the cash payment plaintiff was to make from this amount, and the difference is adjudged to be a lien upon the property he was to convey to defendants. According to the weight of the testimony, plaintiff's property, at the outside estimate, was not worth more than $5,000 to $6,000. This would leave no margin of value to the defendants in excess of the liens mentioned. This result only serves to emphasize the incapacity of the defendant when he made the contract. A deal

which leaves the advantages to be derived from it so much on one side does not appeal to conscience. It comes directly within the rule that a contract will not be enforced in equity where there are indications of overreaching and undue advantage.

We disagree with the court on the conclusion reached, that there were no representations of value made. Both defendants testify that such representations were made, and they are supported by the inherent probabilities of the case. They lived twenty miles distant from Waukesha, and neither had any knowledge of values of property therein, or any means of judging of its value. *Albertz* claimed that his property was worth $100 per acre, or $22,000. The plaintiff does not deny that he stated to *Mrs. Albertz* that his property was worth $14,000,— a statement made to induce her to sign the contract. Whether we regard it as a mere expression of opinion or an absolute representation of fact, it is a circumstance proper to be considered on the question of the specific performance of the contract, with the other facts in the case. The conditions were such that it had the force and effect of an express representation, so far as the rights of *Mrs. Albertz* are concerned. Whatever of reluctance she might have to signing the contract would be quite likely to be removed by a representation that the property was worth the amount stated. Had its actual value been stated, quite a different aspect would have been presented. The wife was called upon to part with valuable rights, and she had a right to rely, as she says she did, upon the statement of value made. That the statement was false is a fact of absolute certainty in the case,— false to the amount of $6,000 or $7,000. It was made at a time quite opportune to the end in view, and seems to have served its purpose. It operated as a fraud upon the rights of the defendant, and ought not to receive the sanction of a court of equity. Surveying the whole case, we are convinced that the contracts

were not fair in all their parts; that they were not free from misrepresentations and imposition; that the bargain was unconscionable and hard; and that their performance would be unjustly oppressive to the defendants.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the complaint.