JAMES L. CALLAN, INC., Plaintiff and Appellant, v. ESTFRED CORPORATION and another, Defendants and Respondents: FREEMAN and wife, Impleaded Defendants and Respondents.

*September 5—October 1, 1963.*

2

For the appellant there was a brief by *Charles L. Goldberg* and *Francis X. Krembs,* both of Milwaukee, and oral argument by *Mr. Krembs.*

For the respondent Jetco Properties, Inc., there was a brief by *Mittelstaed, Heide, Sheldon & Hartley* of Kenosha, and oral argument by *William A. Sheldon.*

For the respondents Freeman there was a brief by *Brown & Black* of Racine, and oral argument by *Harley Brown.*

HALLOWS, J. Callan contends its contract with Estfred was specifically enforceable at the time it was entered into because Estfred had legal title to all the lots excepting lot 14 for which it had a contract of purchase with Rose Mattioli which gave rise to an equitable title. Callan then contends its right to specific performance is enforceable against Jetco because Jetco as successor in title to the land from Freeman was not an innocent purchaser without notice, nor was Freeman. In substantiation of the first argument, Callan relies on 49 Am. Jur., Specific Performance, p. 118, sec. 100, to the effect specific performance will be enforced against one who has equitable title to the land by virtue of an executory contract with the holder of the legal title to convey the land to him and suit might be brought to enforce the contract either against the vendor alone, if the purchaser is willing to accept such title, or by joining the holder of the legal title as party defendant. This argument is based on the theory the Mattioli contract was specifically enforceable by Estfred on April 16, 1958. It is undoubtedly true if a contract existed capable of being specifically enforced and suit were brought on that day, a court of equity might decree specific performance. Callan relies also on cases involving specific performance with compensation for a partial breach by way of damages, restitution, or abatement in price. Such remedy is available in Wisconsin in a proper case. *McFarlane v. Dixon* (1922), 176 Wis. 652, 187 N. W. 671, 48 A. L. R. 1; *Dells Paper & Pulp Co. v. Willow River Lumber Co.* (1919), 170 Wis. 19, 173 N. W. 317; *O'Malley v. Miller* (1912), 148 Wis. 393, 134 N. W. 840; Re-

statement, 2 Contracts, p. 659, sec. 365. But to apply such a doctrine the buyer must be willing to accept part performance. In this case Callan is not seeking specific performance with compensation and has never indicated its willingness to accept part performance. Its demands on Estfred were for full performance; the prayer of the complaint calls for full performance; and on this appeal, in its brief, it requests the judgment appealed from be reversed and the cause remanded with instructions that judgment be entered for full performance. Opportunity was given Callan at the close of the trial to prove damages for the breach of the contract by Estfred because it was unable to convey all the lots. This was in lieu of specific performance either full or partial. Callan did not accept the offer to prove damages but appealed.

Regardless of Callan's right to specific performance against Estfred for the lots Estfred had title to and sold to Freeman after breaching its contract, Callan must show that at the time of trial Estfred had a right to specific performance of the Mattioli contract. This Callan has not done and the record does not disclose that at the time Callan entered into the contract with Estfred on April 16th Estfred had a right to specific performance against Mattioli. Estfred did not close the contract to purchase lot 14 on March 15th and was in default. A month later, when Estfred entered into the contract with Callan, lot 14 had been conveyed to Freeman. Estfred apparently accepted the situation that Freeman had a right to buy lot 14 from Mattioli and so far as the record shows took no contrary action to require Freeman to convey lot 14 in recognition of the Mattioli contract. It is true Callan as one who contracted for the purchase of land had a right to rely on the seller Estfred either of having title or of procuring it so as to carry out the promise to convey on the closing date. *McLennan v. Church* (1916), 163 Wis. 411, 158 N. W. 73. As early as May 1st Callan knew Est-

fred did not have title to one of the lots and on May 17th knew Estfred was not going to acquire the title. Equity will not compel a vendor to acquire title to fulfil his contract to sell and convey unless the vendor has a specifically enforceable contract to acquire the title from the third person holding the legal title.

A buyer may acquire through specific performance the right of the vendor to get specific performance against another if such right exists; however, where the seller makes performance impossible either by failing to acquire title to the land he has agreed to convey or allows his rights under the contract to terminate, the vendee cannot get specific performance. It is true some offer to sue for specific performance was made by Estfred if Callan would pay the instalment on its contract so Estfred could sue Freeman. But Callan refused to make the instalment payment. Callan cannot now successfully maintain such a suit in effect as a part of its suit against Estfred and Jetco.

The trial court was not in error in finding that Estfred did not perform its contract and could not perform it. The evidence does not sustain Callan's position that on April 16th Estfred had any right to specific performance of the Mattioli contract either against Rose Mattioli or against Freeman and in the absence of such proof the plaintiff has not sustained its first contention that it is entitled to specific performance on its contract in its entirety. This disposition, which is substantially the analysis of the trial court, makes it unnecessary to discuss the second proposition that neither Jetco nor Freeman was an innocent purchaser without notice because such proposition is predicated upon the right of Callan to get specific performance of the entire contract.

*By the Court.*—Judgment affirmed.