Clarence ANDERSON d/b/a West-Land Company, Plaintiff-Appellant-Petitioner,

v.

Louis C. ONSAGER, Mary Onsager, his wife, Gerald Graf, Betty Graf, his wife, and First National Bank of Sturgeon Bay, a national banking corporation, Defendants-Respondents.

Supreme Court

*No. 88-1812. Argued March 27, 1990.—Decided June 6, 1990.*

(Also reported in 455 N.W.2d 885.)

For the plaintiff-appellant-petitioner there were briefs by *Michael B. Apfeld* and *Godfrey & Kahn, S.C.*, Milwaukee and *Philip L. Johnson* and *Johnson,*

*Herlache, Johnson & Johnson,* Sturgeon Bay, of counsel, and oral argument by *Mr. Apfeld.*

For the defendants-respondents there was a brief by *David M. Quale, Dorothy H. Dey* and *Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.,* Milwaukee and *D. Todd Ehlers* and *Pankratz Office,* Sturgeon Bay, of counsel, and oral argument by *William P. Croke.*

HEFFERNAN, CHIEF JUSTICE. This is a review of an unpublished, per curiam decision of the court of appeals, filed May 2, 1989, which affirmed the judgment of the circuit court for Door county, James T. Bayorgeon, Circuit Judge for Outagamie county, presiding, which denied specific performance of a contract to purchase real estate, but awarded money damages to the plaintiff.

The issue presented is whether the trial court abused its discretion when it did not order specific performance of a contract to convey land. Because there were no legal or factual reasons why the court should not have exercised its power to order specific performance, we conclude that the circuit court should have granted specific performance as a matter of course. We reverse and remand with directions to the circuit court to order specific performance.

This case involves the sale of two parcels of agricultural real estate, owned by Louis C. and Mary Onsager, located in Door county, Wisconsin. Clarence Anderson, the plaintiff, was interested in purchasing this property and through his agent, Carlton Quam, and the Onsagers' agent, Gordon Schumacher, the parties made a series of offers and counteroffers. On January 3, 1986, the Onsagers accepted an offer from Anderson whereby the Onsagers would convey both parcels of property to Anderson for $120,000. Under the terms of the contract,

a standard form farm offer to purchase, the Onsagers agreed to convey the property to Anderson free and clear of all liens and encumbrances. The contract also provided the Seller with reasonable time, not exceeding sixty days, within which to cure any title defects, and in that case additional time for closing. In addition, the contract provided the Buyer could waive defects in the title. Specifically, it provided:

> Should seller be unable to carry out this agreement by reason of a valid legal defect in title which Buyer is unwilling to waive, all money paid hereunder shall be returned to Buyer forthwith, and this contract shall be void.

This real estate transaction was scheduled to close on or before March 31, 1986.

On March 27, 1986, a meeting was held with the parties' attorney, Robert Ross, who was then representing both the Onsagers and Anderson. At this time Anderson learned that the property was encumbered with two judgment liens in excess of the purchase price, and the First National Bank of Sturgeon Bay was unwilling to release its junior lien. The Onsagers owed approximately $106,000 to the Federal Land Bank, the senior lien holder. They owed approximately $90,000 to the First National Bank of Sturgeon Bay, which had a junior lien on one of the land parcels and on the Onsagers' farm machinery and personal property.

The parties disagree about what occurred at the meeting on March 27, 1986. Present at the meeting were: Attorney Ross, Anderson, Anderson's agent, Carlton Quam, and Onsager's listing agent, Gordon Schumacher. The Onsagers were not there. It was Quam's understanding that, as soon as the release of the liens could be obtained, the parties would close. Anderson testified that

either Attorney Ross or Quam was to call him as soon as they were ready to close.

He also stated that Eugene Ackatz, President of First National Bank of Sturgeon Bay, informed Attorney Johnson, who also represented him, that the Bank would be willing to release its lien for $20,000 to $23,000. As soon as Anderson found out about the amount required to release the lien, he offered to pay that amount to discharge it, without recourse. Attorney Ross testified that there was no agreement, to his knowledge, to extend the closing past March 31, 1986.

While Anderson, assuming that the closing would occur at a later date, waited for the Onsagers to make arrangements to clear the title, the Onsagers sold the property to a third party. On March 31, 1986, Gerald and Betty Graf offered to purchase the two parcels for $140,000. The Onsagers accepted this offer on April 4, 1986, and the transaction was scheduled to close on April 24, 1986. On the contract form, the Grafs wrote: "Buyer knows that there is an offer ahead of theirs."

Anderson testified that, on or about April 13, 1986, he offered to purchase the property for $140,000, so the Onsagers would have the $20,000 they needed to release the Bank's lien. On April 21, 1986, Anderson filed a complaint, naming only the Onsagers as defendants, and seeking that the court order the Onsagers to specifically perform the contract by conveying the property. On April 22, 1986, Anderson filed a *lis pendens* pursuant to sec. 840.10, Stats.

The transaction between the Onsagers and the Grafs did not close as scheduled on April 24, 1986. On April 26, 1986, Anderson submitted an amended written offer to purchase the Onsager farm for $120,000 plus $20,000 without recourse, to secure the release of First National Bank's judgment lien on the property.

On April 30, 1986, the Grafs made another offer to purchase the property, this time for $160,000. This transaction closed on May 2, 1986, and the property was conveyed to the Grafs. The Federal Land Bank received a pay-out of $106,249.93 for its judgment on the property. The First National Bank of Sturgeon Bay received $20,264.27 for its judgment. In addition, $20,000 was placed in escrow for the First National Bank, pending the outcome of the action commenced by Anderson.

On November 19, 1986, Anderson amended his complaint against the Onsagers by adding the Grafs and First National Bank of Sturgeon Bay as defendants. On March 2, 1987, trial to the court was held in Door county, James T. Bayorgeon, Circuit Judge for Outagamie county, presiding. Judge Bayorgeon found that Anderson was at all times ready, willing, and able to comply with his obligation to pay the purchase money. Because the *lis pendens* was filed, the court found that the Grafs could not be considered "innocent purchaser[s] or good faith purchaser[s] with respect to the rights of Mr. Anderson."

Judge Bayorgeon issued a written decision on August 18, 1987, which denied plaintiff's request for specific performance. He concluded that there was a valid contract between the Onsagers and Anderson and that the Onsagers breached that contract by failing to deliver clear title. The court concluded, however, that specific performance would be inappropriate because money damages were adequate and because of the inequity to the Grafs and to the First National Bank of Sturgeon Bay. Viewing the transaction from the time of the breach, on March 27, 1986, the court concluded that the Onsagers could not deliver clear title to Anderson, and, therefore, it was impossible for them to convey the property. Furthermore, the court concluded that it did not

have the authority to require the First National Bank of Sturgeon Bay or the Federal Land Bank to in any manner compromise their loans. The court concluded that, although the Grafs knew that there was a contract for the sale of the property between Anderson and the Onsagers, they also knew that Anderson's offer was insufficient to effect a release of the First National Bank of Sturgeon Bay's judgment liens. Therefore, the court concluded that the Grafs were not in any way attempting to subvert Anderson's rights. The court concluded that a total of $160,000 was the required amount to release the liens, and that amount was offered only by the Grafs. From this the court concluded that this resulted in a pecuniary loss to Anderson of $40,000 ($160,000−$120,000=$40,000). The court concluded that "[e]quity will not decree the impossible." Judgment was entered on August 16, 1988, ordering the Onsagers to pay Anderson $40,000. Anderson appealed.

In its unpublished, per curiam decision, the court of appeals affirmed the trial court's decision. The court stated that specific performance is an equitable remedy, addressed to the sound and exclusive discretion of the trial court. *Kimball v. Swanson,* 47 Wis. 2d 472, 481, 177 N.W.2d 375 (1970). The court of appeals concluded that the trial court did not abuse its discretion in determining not to grant specific performance in this case. The court cited *James L. Callan, Inc. v. Estfred Corp.,* 21 Wis. 2d 1, 7, 123 N.W.2d 446, 449 (1963), for the proposition that specific performance will not be granted against a seller whose failure to acquire the title he agreed to convey makes his performance impossible. The court of appeals agreed with the trial court that it would have been impossible for the Onsagers to deliver clear title under the terms of Anderson's offer of $120,000 because the Bank would not release its lien under those terms.

The court rejected Anderson's argument that his subsequent offer to pay the Bank $20,000 cured the impossibility, because that offer was never accepted by the Onsagers and therefore did not ripen into an enforceable contract. Anderson petitioned this court for review of the court of appeals decision.

The first issue before the court is to determine the scope of a trial court's discretion in awarding specific performance of a contract for the sale of real estate. Anderson asserts that, while generally trial courts have broad discretion in determining whether to grant specific performance as a remedy, if the contract is for the sale of real estate, a trial court has no discretion to deny specific performance as a remedy. Anderson relies on our decision in *Heins v. Thompson & Flieth Lumber Co.*, 165 Wis. 563, 573, 163 N.W. 173 (1917), where we stated:

> It is suggested that whether specific performance should be granted in any case of this sort rests in the sound discretion of the court. That is not strictly so. There is no arbitrary judicial power in such a case. The parties being competent to contract, and having made an agreement reasonably certain in all its parts, and not objectionable for unfairness or inequity, there is no room for the exercise of judicial discretion as to whether it should be specifically performed. Such performance is a matter of right.

In addition Anderson cites several authorities which suggest the rule that, where a contract is for the sale of land, there is no room for judicial discretion in determining not to grant specific performance. 11 *Williston on Contracts,* sec. 1418A at pp. 665–68 (Jaeger ed., 1968); 5A *Corbin on Contracts,* sec. 1143 at p. 126 (1964). The stated policy reason for compelling specific performance of contracts to sell land is that each parcel of property is unique and therefore no amount of money damages will

enable the buyer to purchase its duplicate. 3 Restatement (Second) of Contracts 2d, sec. 360, comment "e" at p. 174 (1981).

We acknowledge this oft-stated rule, but a reasonable construction of this rule does not result in the total abnegation of a trial court's discretion. We do not interpret *Heins* or any of its progeny to deprive the trial court of discretion in determining whether or not to grant specific performance on a contract for the conveyance of real estate. In *Krause v. Holand,* 33 Wis. 2d 211, 214, 147 N.W.2d 333 (1967), this court relied on *Heins* in setting forth the scope of the trial court's discretion in awarding specific performance on a contract for the sale of real estate. "When one has clearly established the terms of his contract to buy real estate, he is entitled to specific performance which is not to be denied by judicial arbitrariness." Furthermore, this court has stated, "in granting specific performance . . . '[a] court of equity must be satisfied that the claim for a deed is fair and just and reasonable, and the contract equal in all its parts and founded on an adequate consideration, before it will interpose with this extraordinary assistance.' " *Kimball v. Swanson,* 47 Wis. 2d 472, 481-82, 177 N.W.2d 375 (1970); *Mulligan v. Albertz,* 103 Wis. 140, 143, 78 N.W. 1093 (1899), quoted with approval in *McKinnon v. Benedict,* 38 Wis. 2d 607, 617, 157 N.W.2d 665 (1968). This court has also stated that, where it would be impossible for a party to perform the contract, specific performance will not be granted. *James L. Callan, Inc. v. Estfred Corp.,* 21 Wis. 2d 1, 7, 123 N.W.2d 446 (1963). We conclude that, unless in the course of a trial court's exercise of discretion there are revealed factual or legal considerations which would make specific performance of the contract unfair, unreasonable or impossible, specific per-

formance of a contract to sell land should be ordered as a matter of course.

This interpretation is consistent with more recent decisions of this court. In *Edlin v. Soderstrom,* 83 Wis. 2d 58, 70, 264 N.W.2d 275 (1978), this court discussed the equitable nature of the remedy of specific performance in the context of a contract for the sale of land:

> An action for specific performance is an equitable remedy and rests in the discretion of the court. Judicial discretion must, of course, be exercised in accordance with established rules and standards, but in the absence of an abuse of discretion the trial court's judgment will not be disturbed. *Depies-Heus Oil Co. v. Sielaff,* 246 Wis. 36, 41, 16 N.W.2d 386 (1944); *Heins v. Thompson & Flieth Lumber Co.,* 165 Wis. 563, 163 N.W. 173 (1917); 5A *Corbin on Contracts* sec. 1136 (1964); *Restatement of Contracts* sec. 358–370 (1932).

The *Edlin* court recognized that the fairness of compelling specific performance could be taken into consideration by the trial court in its discretion. Accordingly, the rule requiring specific performance stated in *Heins* in 1917 remains applicable—"[t]he parties being competent to contract, and having made an agreement reasonably certain in all its parts, and not objectionable for unfairness or inequity, there is no room for the exercise of judicial discretion as to whether it should be specifically performed." Therefore, we must determine whether the trial court abused its discretion in refusing to grant specific performance of this contract to convey land.

As this court stated in *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982):

> While, as in all discretionary acts of a court, reasonable persons may sometimes differ in the outcome, all that this court need find to sustain a discretionary act is that the trial court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *See McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971).

*See also In re Paternity of B.W.S.,* 131 Wis. 2d 301, 314, 388 N.W.2d 615 (1986).

We conclude that the trial court abused its discretion when it did not grant specific performance because it did not consider the clear terms of the contract governing this transaction and failed to apply the contract terms to the relevant facts. The contract in this case is a standard form farm offer to purchase.[1] Under the terms of the contract, the Seller has the obligation to convey the property to the Buyer free and clear of all liens and encumbrances. The contract also provides the Seller a reasonable time, not to exceed sixty days, within which to correct any title defect, and in such cases the time of closing is extended. In addition, the contract gives the Buyer the opportunity to waive defects in the title. Specifically, the contract provides:

> Should Seller be unable to carry out this agreement by reason of a valid legal defect in title which Buyer is unwilling to waive, all money paid hereunder shall be returned to Buyer forthwith, and this contract shall be void.

What occurred in this case is that Anderson discovered, shortly before the transaction was scheduled to close, that a defect in the title had not been corrected.

[1]Form #WB-12.

Under the terms of the contract, if the Buyer has knowledge of a defect in the title, the Buyer must indicate whether or not he or she is willing to waive the defect. If the Buyer is unwilling to waive the defect, any money paid on the contract is returned to him, and the contract is deemed void. If, on the other hand, the Buyer is willing to waive the defect, the contract is extended beyond the closing date for a reasonable time until the Seller is able to cure the defect, or the Buyer chooses to accept the defective title, as is. Therefore, the relevant inquiry is whether the Buyer, Anderson, waived the defect in this case. While this inquiry was not addressed by the trial court, on the basis of the undisputed facts of record, we make that legal inquiry.[2]

If Anderson was unwilling to waive the defect in title, the contract provides that he is entitled to get back any money paid ($2,000) and nothing more. Therefore, the trial court erred by awarding damages in the amount of $40,000 based on the conclusion that the Onsagers breached the contract by failing to convey merchantable title to Anderson on the date of the scheduled closing. The contract expressly provides that, if the Buyer is unwilling to waive the defect, then the contract is void, and Buyer would not be entitled to any additional money damages nor would the Buyer have a contract to be specifically performed. Thus, the circumstances envisaged by the court, as a matter of law, did not constitute a breach under the terms of the contract.

---

[2]Where only one reasonable inference can be drawn from the undisputed evidence, the drawing of that inference is a question of law. *Vocational, Tech. & Adult Ed. Dist. 13 v. ILHR Dept.*, 76 Wis. 2d 230, 240, 251 N.W.2d 41 (1977). Here the only reasonable inference which can be drawn from the undisputed facts is that Anderson was willing to waive the defect. *See also State v. Williams,* 104 Wis. 2d 15, 21–22, 310 N.W.2d 601 (1981).

If Anderson was willing to waive the defect, we construe the contract as providing for two choices: A reasonable time in which the Seller may cure the defect or, in the alternative, the Buyer may choose to accept the imperfect title. Our review of the record indicates that the trial court did find that Anderson was at all times ready, willing, and able to provide whatever funds were required in order to purchase the land. This finding is not clearly erroneous. Section 805.17(2), Stats. Anderson testified that as soon as the Bank's president told his lawyer how much was required to obtain a release from the Bank, he offered to pay that amount to the Onsagers. Anderson also testified that it was his understanding that the closing was being temporarily delayed, and that, as soon as the Onsagers cleared the title, he would be contacted to close the transaction. The trial judge stated that Anderson's testimony was not contradicted by the testimony of other witnesses, including testimony that the Onsagers' agent attempted to return Anderson's earnest money to his broker after the Grafs made an offer to purchase the property. In addition, Anderson filed his action for specific performance on April 21, 1986. The following day he filed a *lis pendens* covering the property. These actions indicate that Anderson intended to purchase the property notwithstanding the defective title. Accordingly, on these undisputed facts, we conclude that Anderson demonstrated that he was waiving the defect in the title, because he was willing to provide whatever funds were necessary to purchase the land. Therefore, under the contract, the closing was extended for a reasonable amount of time, not to exceed sixty days, allowing Seller and Buyer additional time to work out the transaction.

Because we conclude that there was an enforceable contract between the Onsagers and Anderson at the time that Anderson commenced this action, we must determine whether the trial court abused its discretion in denying Anderson's prayer for specific performance. In reviewing a trial court's decision whether to grant specific performance, we defer to the trial court only on those determinations in respect to which the exercise of discretion is appropriate. The trial court found that it was impossible for the Onsagers to perform on March 31, 1986, the day of the closing, and, therefore, Anderson was not entitled to specific performance. The trial court incorrectly failed to consider any events after March 31, 1986, because it had concluded that, as of the "breach," the contract was no longer in existence. Hence he concluded that events after that date were irrelevant. As long as Anderson was willing to waive the defect, the contract, by its terms, did not automatically terminate, and the trial court should have looked at subsequent events to determine whether the impossibility of performance was subsequently removed.

A court may order specific performance of a contract to convey land where the vendor has merchantable title or where, with reasonable effort, the vendor may obtain merchantable title. *Douglass v. Ransom,* 198 Wis. 445, 447, 224 N.W. 473 (1929). We conclude that, after Anderson provided the Onsagers with the $20,000 needed to obtain a release from the First National Bank of its judgment lien, he was entitled to specific performance. Any legal impossibility or inequity which existed prior to that time, which may have justified the trial court's refusal to grant specific performance, was thereby cured. Because the circuit court failed to consider events

after March 31, 1986, the scheduled closing date, which cured any impossibility, it erred as a matter of law. If a trial court bases its exercise of discretion upon an error of law, this constitutes an abuse of discretion. *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968).

The court of appeals construed Anderson's offer to provide the additional $20,000 to the Onsagers as a separate offer which was never accepted by the Onsagers, and therefore never ripened into an enforceable contract. A review of the record demonstrates that Anderson's offer to provide the additional $20,000 was an "amended offer," not a new or separate offer. It provided:

> West-Land Co. by Clarence Anderson, Agent, and Clarence Anderson individual, hereby agree to amend the farm offer to purchase dated November 12, 1985, and subsequent counter offers with Louis C. Onsager and Mary Onsager to provide that the purchasers shall provide funds necessary to secure the release of the present First National Bank foreclosure of mortgage judgement against the Wilson Road property to an extent of $20,000.00 over and above the purchase price of $120,000.00. There is no liability upon sellers to repay any of this additional $20,000.00 to buyer. Transaction to be closed on or before May 2, 1986. All other provisions of the farm offer to purchase as amended to remain if [sic] full force and effect.

Under the court of appeals view, Anderson's offer to pay the Onsagers an additional $20,000 had to be construed as a separate offer, because it had already concluded that the original contract had terminated when the parties failed to close the deal by March 31, 1986. This assumption was erroneous because, as explained above, the original contract did not automatically terminate when the parties did not close.

The trial judge also held that a $160,000 purchase price was necessary in order to effect a release of the Bank's lien. If this were correct, it would have justified the trial court's refusal to grant specific performance. The record reflects, however, that $140,000 was sufficient to obtain a release of the Bank's lien. Eugene Ackatz, President of First National Bank of Sturgeon Bay, testified that he had informed the parties, including Anderson's attorney, in April 1986, that the Bank would be willing to release its lien on one of the parcels for approximately $20,000 to $23,000. He also testified that the Bank released its lien for $20,264.27.[3] Therefore, the trial court's conclusion that a purchase price of $160,000 was required in order to discharge the Bank's junior lien was incorrect and did not justify the court's refusal to grant specific performance of the contract, as amended, to convey the property.

Finally, the trial court held that, even though the Grafs were not innocent third parties because they had actual and constructive knowledge of Anderson's prior offer, it would refuse to order specific performance because the Grafs did not purchase the property with the intent to subvert Anderson's right to the property. The trial court's reasoning violates the basic principle that a subsequent purchaser with actual or constructive knowledge of a third party's interest takes title subject to that interest. *See Brevig v. Webster*, 88 Wis. 2d 165, 180, 277 N.W.2d 321 (Ct. App. 1979), and cases cited therein.

[3]Ackatz testified that the Bank would receive an additional $20,000, which is being held in escrow, if the Grafs prevailed in this action. However, he made it clear that the Bank was willing to release its lien without that $20,000 in escrow. Because the Grafs did not prevail, the $20,000, along with any other money paid by the Grafs, will be returned to them on remand.

The subjective intent of the subsequent purchaser is irrelevant. That the Grafs were both constructively and actually aware of Anderson's interest in the property is made clear by the notation they made on their first offer to purchase: "Buyer knows that there is an offer ahead of theirs." In addition, Anderson filed the *lis pendens* before the Grafs purported to purchase the property. Section 840.10(1), Stats., provides that every purchaser or encumbrancer whose purchase or encumbrance is not recorded at the time a *lis pendens* is filed shall be deemed a subsequent purchaser or encumbrancer. While the trial court had discretion to deny specific performance if it had concluded that it would have been inequitable to the Grafs, that was clearly not the finding by the trial court that could be justified in this case.

Under the facts and circumstances of this case, we conclude that the trial court abused its discretion in refusing to grant specific performance. We conclude that there were no legal or factual considerations which would have made the granting of specific performance unfair, unreasonable or impossible, and, therefore, specific performance of the contract to convey land should have been granted as a matter of course.

*By the Court.*—Decision reversed and cause remanded to the circuit court.